Fourth Division

August 14, 1997

No. 1-96-2039

THE PEOPLE OF THE STATE OF ILLINOIS, )  APPEAL FROM THE

)  CIRCUIT COURT OF

Plaintiff-Appellant, )  COOK COUNTY.

)

v. )

)

SHAWN EDWARDS, )  HONORABLE

)  RONALD HIMEL,

Defendant-Appellee. )  JUDGE PRESIDING.

MODIFIED UPON DENIAL OF PETITION FOR REHEARING

PRESIDING JUSTICE WOLFSON delivered the opinion of the 

court: 

Shawn Edwards was celebrating with friends on New Year's Eve.  He brought a loaded gun.  At one point during the evening he fired the gun.  A bullet from the gun struck one of his friends.  The friend died a short time later.

When Edwards was tried for first degree murder he claimed he did not know the gun was loaded at the time he fired it.  In a bench trial, the judge found Edwards guilty of first degree murder.  Edwards was sentenced on March 23, 1994, to 20 years imprisonment.  The conviction was affirmed on direct appeal, where the only issue was whether the trial judge's conduct deprived Edwards of a fair trial.  
People v. Edwards
, No. 1-94-1209, unpublished order filed June 10, 1996.

While the direct appeal was pending, Edwards filed a 
pro
 
se
 Post-Conviction Petition, alleging a number of constitutional errors, as well as a claim of innocence based on a witness's recantation.  On December 11, 1995, and again on May 13, 1996, the trial court granted the petition for post conviction relief, finding that the witness's recantation of his trial testimony constituted new evidence of the defendant's innocence.  A new trial was ordered.

The State appeals, claiming the trial court's decision to grant a new trial was against the manifest weight of the evidence.  We agree.  We reverse the trial court's grant of post-conviction relief.  We remand, however, for further post-conviction proceedings.

FACTS

This appeal requires a review of the evidence presented at trial and a comparison with the evidence presented in support of the Post-Conviction Petition.

In a bench trial held on January 10-11, 1994, Edwards was prosecuted for the January 1, 1993, shooting death of Clinton Parker (known as Ricky).  The evidence showed Edwards had been drinking that New Year's Eve and was extremely intoxicated.  He had a gun and had been firing it throughout the night in celebration of the New Year.  

The event for which Edwards was prosecuted occurred at about 2 a.m., in front of 944 North Lavergne in Chicago.  Edwards' friend, Malcolm Steele, drove Renee Banks to her home.  Edwards and Steele walked Renee to her door, while three other friends remained in the car.

Ricky was one of the friends in the car.  He became impatient waiting for Steele and Edwards.  He got out of the car and began taunting his friends to "hurry up."  There was some good-natured banter back and forth, with Steele telling Ricky to be patient.  At this point, Edwards pulled out his gun.

What happened next goes to the center of this dispute.  At trial, Edwards admitted that he shot Ricky.  His lawyer, however, argued that the shooting was involuntary manslaughter because Edwards, thinking the gun was unloaded, had acted recklessly when he pointed the gun in the direction of Ricky and pulled the trigger.  Counsel said in opening statement:

"And I think the evidence will bear that out, Judge, and you will hear from Malcolm Steele that when he got to the house and Shawn pulled out the gun he hit his arm and as he was hitting his arm the gun clicked . . . So Malcolm was actually walking in the line of fire when he heard two more clicks.

And Judge, I think Shawn will testify he thought the gun was unloaded."

The State produced two eyewitnesses, Malcolm Steele and Bernard Meeks.  Meeks testified that he had been sitting in the car when the shooting occurred.  Ricky, he said, had gotten out of the car and was yelling at Steele to hurry up.  Edwards pulled out a gun and aimed it at Ricky.  Meeks ducked down in the car, not knowing what was going to happen next.

A short time passed, Meeks said, then he looked up and saw that Edwards had put the gun down by his side.  Then, because Ricky was still in the street yelling at Steele and Edwards, Edwards raised the gun again.  This time a shot was fired and struck Ricky.

On cross-examination, Meeks was asked where Steele was standing when the shot was fired.  Meeks said:

"Only reason why I know where Shawn was standing was because I remember the colors of their coat and I think Malcolm he was in front of Shawn but he wasn't like at the bottom of the steps.  He was probably like three or four steps down or something like that."

Later, Meeks admitted that he was not sure where Steele was standing in relation to Edwards when the gun went off.

Meeks also testified that they all thought Ricky was joking about being shot.  When they realized that Ricky had been hit, everyone, including Edwards, ran to his aid.  They helped him into the car and immediately drove him to the hospital. 

Steele's testimony about the occurrence was very similar.  He said that as soon as Edwards pulled the gun out of his pocket he grabbed Edwards' wrist and told him to put the gun away.  Steele said that he heard the gun "click" when he grabbed Edwards' wrist.  This, he said, made him think the gun was empty.

This followed:

"Q (prosecutor): After it clicked, what happened next? 

Did you still have hold of his wrist?

A. (Steele):  Yes.  I told him like put it up.  He said okay.  Then I proceeded to walk down the stairs as if we was fixing to go.

Q.  Did you let go of his wrist?

A.  Yes.

Q.  As you proceeded down the stairs, did anything happen next?

A.  As I proceeded down the stairs, I was like directly in front of him, he was like behind me and I was in line with Ricky.  As I was walking down the stairs --

Q.  Where was Clinton [Ricky] at this time?

A.  He was across the street, he was directly pretty much

in front of me.

Q.  Was he saying anything to Shawn at that time?

A.  He was dancing around in the street.

      ***

I know he was dancing around in the street, acting silly. 

                ***

Q.  What happened next?

A.  Then the gun went off; and when the gun went off my reaction, I turned around and when I turned around and saw Shawn, he had a blank look on his face.  Then I turned around and Ricky fell and he kept saying that I am shot, I am shot."

Detective Mark Sanders was the last State witness to testify at trial.  He said that shortly after the incident occurred, at about 4:40 a.m. on January 1, 1993, he interviewed Edwards at Area 5 headquarters.  Edwards said he shot Ricky because he was irritated at Ricky's impatience to leave.  Detective Sanders also testified that Edwards told him that he knew there was one live round in the gun and he shot in Ricky's direction, intending "to scare him back into the car."

Shawn Edwards testified in his own defense at trial.  He said that he took the gun out of his pocket when he was standing on Renee Banks' porch.  Ricky was near the car.  Edwards said he heard the gun "click" when he pulled the trigger the first time and, because of this, he believed the gun was empty.  Edwards also said that, because he was under the impression that the gun was empty, he continued to pull the trigger while pointing the gun "towards the alley" near where Ricky was standing.  At some point the gun fired.  Edwards was surprised when the gun fired.  He ran to Ricky, who had fallen down.

On cross-examination, Edwards was asked to explain the situation in greater detail.  The trial transcript reveals the following colloquy:

"Q. (prosecutor:) Well, let's talk about the clicks.  You pointed the gun at Clinton, isn't that right?

A. (Edwards:) No, I wasn't trying to point it at Clinton.

Q. Well, where did you point it?

A. I pointed it toward the alleyway.  My car was parked by an alleyway.  The only way it came in really that direction is because Malcolm grabbed me.

***

Q.  And when you were pointing the gun in the direction of Ricky how was the gun pointed?  Could you show the judge how it was pointed at that time?

A.  It was up this time because, you see, I was just goofing off.

MR. BYRNE:  Indicating again for the record in roughly the same position as he had it the other two times, Judge.

Q.  Isn't it a fact that Malcolm told you at the time you pointed the gun in Ricky's direction not to point it at him, didn't he grab your arm and put your arm down?  Do you remember that?

A.  I remember him grabbing my arm.  He said stop messing around, man.

Q.  And he told you to put the gun away, didn't he?

A.  That was his indication.

Q.  But you didn't put the gun away, did you?

A.  No."

Edwards explained that the only reason he told the police he knew there was one live round in the gun was because it fired.  He said he didn't know the gun had a live round in it before it fired.

After hearing argument, the trial court stated it did not believe Edwards' defense that he did not know the gun was loaded.  The court chose to believe that Edwards knew there had been one live round in the gun, based on Edwards' statement to the police.  For this reason, the court rejected defense counsel's argument that Edwards' acts constituted involuntary manslaughter.  The court found Edwards guilty of first degree murder.

On March 10, 1994, the court held a hearing on defendant's motion for a new trial.  At that time the judge said:

"Certainly because of this young man's age and because of the participants I always felt if there was any possibility of believing that he thought that gun was empty, I would have ruled in his favor, but, in effect, the physical facts in this case, the defendant's own testimony and all the other facts involved, would indicate that this young man committed the offense of murder and the fact that he killed a friend of his on New Year's Eve, the fact of the tragedy of the case itself because of his young age is a tragedy, but I have to tell you that the facts that were presented in this case are a murder."

At this March 10th hearing, the court was adamant in its belief that Edwards was guilty of murder and that the shooting was no accident.  Two weeks later, on March 23, 1994, the court still held the belief that the facts supported the murder conviction.  But the court's remarks were tempered because of the many letters that had been sent to the court on Edwards' behalf.  The court said:

"I certainly am impressed with all the people that have faith in you, young man."

Later, the court said:

"From what you tell me, this young man is not one of those individuals that need (sic) to be in the penitentiary.  So let me assure you if there's anything I can do to help or say in changing that situation, I will do it."

Then the court sentenced Edwards to the minimum sentence under the law -- 20 years.

A notice of appeal was filed.  But on July 1, 1994, before any appellate brief had been submitted, defendant filed a 
pro
 
se
 Post-Conviction Petition with the trial court.  Attached to the petition was an affidavit by Malcolm Steele dated November 1, 1993 (before trial began).  In this affidavit Steele said he "instigate[d] the act that caused the death of Mr. Clinton Parker, by pulling down the arm of Mr. Shawn Edwards while he was in the act of discharging a .357 caliber pistol in celebration of the new year."  Steele further stated that he had been coerced by the State's Attorney into changing his story to say there had been an argument.  Steele added, however, that because Shawn had been firing the gun near the liquor store earlier in the evening, both he and Shawn believed that the gun was empty.

A second affidavit by Steele, dated March 7, 1995, after trial, also was presented to the court.  In this affidavit Steele stated, once again, that he pulled Shawn Edwards' hand down as he was firing the gun, causing the bullet to strike Parker.  This affidavit, however, contains no reference to coercion by the State, nor is there any statement concerning a belief that the gun was empty.

On December 11, 1995, the court held a preliminary hearing on Edwards' 
pro
 
se
 Post Conviction Petition.  Before hearing any testimony or argument, the court granted defendant's request for a new trial, saying:

"However, the allegations and the affidavit by Mr. Steele would indicate that he in fact hit the arm of Shawn Edwards and caused the shots to be fired.  If that is in fact the truth then a serious travesty of justice has occurred.  For those reasons I'm granting the defendant's motion for post conviction relief."

The State filed a motion to reconsider and, on May 13, 1996, a hearing was held on the motion.  At this time, Malcolm Steele was called to testify.  When asked why his affidavit differed from his testimony at trial, Steele said:

"Well, actually, at that time when it was happening, it was such -- not saying it was a lot of confusion, but I didn't -- I was kind of in fear of myself being implemented into this as far as getting charged and/or blamed for the accident.

He was asked:

"Q. Now, did anybody give you this impression?

A.  No.  No one gave it to me but I just had that -- I just had that vibe.  And the last thing I needed at that time was to be charged with anything."

After hearing Steele's testimony, the court denied the motion to reconsider, saying:

"Well, okay.  Based on the recantation, as the State would like it referred to, of Malcolm Steele, I think it's the statement that he originally made and that changed out of fear of being prosecuted or charged with the same crime.  For those reasons, the defendant's post conviction relief is granted.  Defendant, new trial.  Same bond to stand."

DECISION

First, we must determine where, in post-conviction law, the defendant's challenge to his conviction fits.  While doing so, we

assume the trial judge found Malcolm Steele committed perjury at the trial but told the truth in his first and second affidavits.

Three recent Illinois Supreme Court decisions inform our judgment.  In 
People v. Brown
, 169 Ill. 2d 94, 660 N.E.2d 964 (1995), a four to three decision, the Court held it was not enough for a defendant to claim his conviction was obtained by false testimony.  To come within the Post Conviction Hearing Act (725 ILCS 5/122-1 
et
 
seq
. (West 1994)) the defendant has to allege and then prove the State knew or had reason to know of the false testimony.  Otherwise, said the Court, there is no constitutional question.

Is there any remedy for defendants who claim their convictions are based on perjured testimony but do not say the State knew of the lies?  Yes, said the Court in 
Brown
.  They can proceed under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1994)).  
Brown, however, waived the right to ask for post-judgment relief under section 2-1401 because he raised the claim for the first time in his reply brief in the Supreme Court.  Three dissenting judges would have sent the case back to the trial court for a section 2-1401 hearing on 
Brown's petition.

Five months later, in 
People v. Washington
, 171 Ill. 2d 475, 479, 665 N.E.2d 1330 (1996), the Court was faced with what it referred to as a "'free-standing' claim of innocence" in a Post  Conviction Hearing Act proceeding.  That is, the defendant presented newly discovered evidence that the trial judge found would have had "some significant impact" on the jury.  No State complicity was claimed.  The trial judge's grant of a new trial was affirmed by the Supreme Court.

Federal constitutional due process offers Washington no relief, said the Court, but the Illinois Constitution does:     "We therefore hold as a matter of Illinois constitutional jurisprudence that a claim of newly discovered evidence showing a defendant to be actually innocent of the crime for which he was convicted is cognizable as a matter of due process."  
Washington
, 171 Ill. 2d at 489.

Free-standing innocence claims based on newly discovered evidence are to be resolved like any other claims brought under the Post-Conviction Hearing Act.  The supporting evidence of actual innocence must be "new, material, noncumulative and, most importantly, 'of such conclusive character' as would 'probably change the result on retrial.'"  
Washington
, 171 Ill. 2d at 489, citing 
People v. Silagy
, 116 Ill. 2d 357, 368, 507 N.E.2d 830 (1987).  Also see 
People v. Pecoraro
, 175 Ill. 2d 294, 334, 677 N.E.2d 875 (1997).

Brown
 was not cited by the majority in 
Washington
.  We assume that is because 
Brown
 was a false testimony case, where the defendant's claims were directed at the truth of the State's evidence, while 
Washington
 was an actual innocence case, where  the newly discovered evidence caused the Court to say, for the  first time, substantive due process, as a matter of Illinois  constitutional law, requires "***that no person convicted of a crime should be deprived of life or liberty given compelling evidence of actual innocence."  
Washington
, 171 Ill. 2d at 489.

The third case we examine, 
People v. Burrows
, 172 Ill. 2d 169, 665 N.E.2d 1319 (1996), was filed on the same day as 
Washington
, April 18, 1996.  Burrows, after his death sentence had been affirmed, asked for post-conviction relief under the Post-Conviction Hearing Act 
and
 for post-judgment relief under section 2-1401.  He presented testimony from two of the State's witnesses that they perjured themselves at his trial, one of them admitting she alone committed the murder.  He also produced another witness, unavailable at the time of trial, who testified that one of the recanting State witnesses admitted committing the murder.

Burrows' post-judgment section 2-1401 petition alleged his convictions were based on the perjured testimony of the two State witnesses.  His post-conviction petition alleged, among other things, that newly discovered evidence of actual innocence warranted a new trial.  The trial judge granted Burrows a new trial.  The Supreme Court, after reviewing trial and post-trial evidence, affirmed.

The Court, due to a State waiver, assumed newly discovered

evidence of actual innocence presents a State constitutional question appropriate for post-conviction relief.  (No assumption was necessary because the Court so held that same day in 
Washington
.)  The Court went on to hold that perjured testimony "may form the basis for a new trial if raised in a motion for post-judgment relief under section 2-1401***" 
Burrows
, 172 Ill. 2d at 180.  The Court sorted out the criteria that apply to each avenue of relief. 

For a new trial based on newly discovered evidence (Post-Conviction Hearing Act), the defendant must present  evidence which was not available at his trial, evidence he could  not have discovered sooner through the exercise of due diligence. In addition, the evidence "must be of such a convincing character that it would likely change the outcome of the trial."  
Burrows
, 172 Ill. 2d at 180.

For a new trial based on perjured testimony by State witnesses (section 2-1401), the defendant must prove, "by clear and convincing proof, the substance of his allegations."  
Burrows
, 172 Ill. 2d at 180.  A reviewing court will disturb the trial judge's determination only if it is against the manifest weight of the evidence.  
Burrows
, 172 Ill. 2d at 180.  Section 2-1401 relief is statutory, not constitution based.

With these holdings in mind, we turn back to the case before us.  While Edwards did not file a section 2-1401 petition, we note that he apparently drew his own petition without assistance  of counsel.  In fact, Edwards did not appear on his petition on December 11, 1995.  The trial judge ruled without him.  Those facts, in addition to the muddled state of the record, persuade us to examine the evidence for either newly discovered evidence of actual innocence or clear and convincing proof of perjury at Edwards' trial.

In Malcolm Steele's first affidavit, prepared before trial, he said he pulled down Edwards' arm while Edwards was in the act of discharging the weapon.  He also said the State's Attorney called him "to their office to coerce and threaten me into changing my story***."  During oral argument before us defense counsel admitted that Steele gave this version of the facts to Edwards' trial lawyer before the trial began.  We cannot see how the "pulling down the arm" explanation of how the gun was fired can be deemed newly discovered, especially in light of what happened at trial.

From beginning to end, from opening statement to final argument, the defense theory at trial was that Edwards believed the gun was empty when he pulled the trigger.  Steele testified

that he did grab Edwards' wrist, but then let go of it and started walking down the stairs.  As he was walking down the stairs he heard the gun go off.  Defense counsel's cross-examination of Steele reflected neither surprise nor disappointment.

That account fit Bernard Meeks' testimony.  Meeks said Steele was three or four steps down from Edwards when the shot was fired.

More significantly, Edwards said the same thing.  He believed the gun was empty.  He was pointing the gun in Clinton's general direction because Steele had grabbed his arm.  He never said the gun went off because Steele grabbed or pulled his arm. He testified on direct examination:

    "Q.  When you pulled the trigger and the gun went off, did  you think the gun was capable of firing?

     A.  No."

And,

    "Q.  When you pulled the trigger the last time did you know you were going to kill him?

     A  No."

And,

     "Q.  Did you even know there was a chance--that time you pulled the trigger--did you even know there was a possibility you could hurt him?

     A.  No."

We also note that Edwards never told Detective Sanders anything about the gun going off because Steele grabbed or pulled his arm.

In Steele's second affidavit and in his testimony at the post-trial hearing, Steele again said the gun fired when he pulled down Edwards' arm.  This time he said nothing about being called in and coerced by the State's Attorney.

Steele's post-conviction affidavit and testimony do not represent newly-discovered evidence.  Nor do they amount to a truly persuasive demonstration of innocence.  Any finding to the contrary would be against the manifest weight of the evidence.  If Malcolm Steele had told this most recent story at trial it would have been contradicted by Meeks, by the defendant, and by the defendant's lawyer.  For these reasons, this case does not satisfy the requirements of 
Washington
.

The trial judge's reasons for granting the new trial are unclear, but he referred to Steele's post-trial statements as "recantation."  We assume that means the trial judge believed

Steele committed perjury at trial but now was telling the truth.  Since no one contended the State knew about any perjury, we will apply the citeria suggested in 
Burrows
 for a section 2-1401 non-constitutional post-judgment review. 

The State infers that some outside influence must have affected the trial court's decision to grant Edwards a new trial.  The State's claim finds no support in the record, although we are puzzled by the trial court's reference to "enough information provided by Mom and the other people in the community***"

We believe, however, the defendant failed to present clear and convincing proof that Steele's trial testimony was perjured.

The trial judge's decision that it was perjured is against the manifest weight of the evidence.  As a general rule, "recantations are often deemed highly unreliable."  
Burrows
, 172 Ill. 2d at 188.  This case fits squarely within the general rule.

Therefore, while we assume, without deciding, that a section 2-1401 analysis is appropriate, we find the trial court erred when it granted the defendant a new trial based on the posttrial affidavit and testimony of Malcolm Steele.

We have concluded the case should be remanded for further post-conviction proceedings.  There are two reasons that remand, rather than outright reversal of the trial court's decision to grant a new trial, is required: (1) the trial court made no  formal determination on the remaining constitutional issues raised in the 
pro
 
se
 post-conviction petition, and (2) assigned post-conviction counsel did not file a certificate under Supreme Court Rule 651(c), no amended post-conviction petition was filed, and the record fails to demonstrate that counsel fulfilled his obligations under Rule 651(c) to ascertain the basis of the remaining post-conviction complaints, shape the complaints into appropriate legal form, and present constitutional contentions to the court.  See 
People v. Johnson
, 154 Ill. 2d 227, 609 N.E.2d 304 (1993). 

We note that defendant, in his brief, drew our attention to the fact that post-conviction counsel did not comply with Rule 651(c), although argument was limited to "the failure of post-conviction counsel to amend Mr. Edwards' petition to adequately present 
his perjury claim
."  The State, in its reply brief, made no reference to counsel's failure to comply with Rule 651(c).

The absence of a Rule 651(c) certificate is harmless only if the record shows that counsel met the requirements of the rule.  
People v. Guest
, 166 Ill. 2d 381, 409, 655 N.E.2d 873 (1995).  In this case the record discloses that on December 11, 1995, the date set for hearing on defendant's 
pro
 
se
 post-conviction petition, the public defender assigned to represent Edwards was not present in court.  A colleague had been sent to request a continuance.  Edwards was not there, either.  The trial court, without hearing argument from defense counsel or the State, granted the motion, reinstated the case, and granted a new trial.

The State filed a motion to reconsider on December 19, 1995.  On May 13, 1996, a hearing was held on the motion.  The court denied the motion to reconsider.  After the denial of the motion for reconsideration, defense counsel, with good reason, did not know where the post-conviction proceedings stood.  He questioned whether the trial court had, in fact, already vacated the conviction and granted a new trial.

The trial court then indicated that it "need[ed] to hear the testimony again of Steele" and "the crucial testimony of anyone present at the time of this New Years Eve shooting."  Defense counsel had only Steele available to testify, in addition to Edwards, who was not called to testify.

After Steele testified, the court said, "I thought maybe we'd have a hearing where you'd call some people."  Later, the court said, "I would like to call [Trial counsel Barry] Spector to see if -- if my -- that's what I would like and I -- that's what I though you might do to make a determination if in fact Mr. Steele actually made a statement consistent with his testimony originally when he was interviewed by Mr. Specter, as Malcolm Steele testified to.  That changes all the aspects of the statements."

But the trial judge then expressed his belief that Steele's recent testimony was the same as his original testimony and, based on that belief, granted the post-conviction request for a new trial.

In light of these circumstances, post-conviction counsel could have been mislead into believing that it was unnecessary for him to fulfill all of his obligations under Rule 651(c).  After all, the petition had already been granted and the hearing was scheduled to hear argument on the State's motion to reconsider.  Although Steele was available to testify, counsel had no witnesses available other than the defendant to establish the other constitutional claims in the 
pro
 
se
 petition, including the claim of ineffective assistance of counsel due to the failure of counsel to impeach Steele's trial testimony with his "original statement."

As the Court stated in 
People v. Johnson
, 154 Ill. 2d 227, 609 N.E.2d 304 (1995), post-conviction counsel has a duty under Rule 651(c) to present petitioner's claims in an appropriate legal form and to attempt to obtain affidavits from witnesses to shape the allegations in the post-conviction petition into appropriate legal form.  When the record does not disclose this was done, it is appropriate to remand so that "post-conviction counsel may comply, insofar as compliance is possible, with Rule 651(c)."  As in 
Johnson
, we express no opinion on the question of whether an evidentiary hearing is necessary, but we remand so that the trial court may have a complete record from which to make its ruling.

                     CONCLUSION

The order of the trial court granting the defendant a new trial is reversed.  The cause is remanded for further post-conviction proceedings.

REVERSED and REMANDED. 

McNAMARA and CERDA, JJ., concur.