GARY KLEM, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF CHICAGO *et al.*, Defendants-Appellees.

Second District   No. 2—95—0019

Opinion filed October 2, 1995.

Russell J. Fee, of Law Offices of Russell J. Fee, of Oak Park, for appellant.

Lynn A. Goldstein and Gloria R. Mitka, both of First National Bank of Chicago Law Department, of Chicago, for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Gary Klem, appeals from the trial court's order dismissing his complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)), on the grounds that it was barred by the Credit Agreements Act (the Act) (815 ILCS 160/ 0.01 *et seq.* (West 1994)). For the reasons that follow, we affirm.

The facts of the case, as alleged in the plaintiff's complaint, are as follows. The plaintiff had been employed by defendant Gary-Wheaton Bank (the Bank) since 1973. At the time of the plaintiff's resignation in 1991, he held the title of "Vice-President/Manager-Product Management and Development." In 1988, Gary-Wheaton was purchased by defendant First Chicago Corporation, a bank holding company of defendant First National Bank of Chicago. First Chicago Corporation has since done business through Gary-Wheaton and its other wholly owned subsidiaries under the name of First Chicago.

Sometime in August 1991, defendant Robert Hesterman, the Bank's president, informed the plaintiff that his position would be eliminated at the first of the year pursuant to a staff reduction and suggested that the plaintiff immediately seek other employment. The plaintiff subsequently informed Hesterman that his only employment prospect was a joint-venture opportunity to market banking software. The venture, however, required a capital contribution of $60,000 and the plaintiff's full-time participation prior to the end of the year.

The plaintiff told Hesterman that he was unable to provide the capital without financing. In response, Hesterman stated that the plaintiff had no option but to take advantage of the joint-venture opportunity and told him that "the Bank" would provide him with a line of credit sufficient for the capital contribution. The plaintiff requested that "the Bank" provide him with said line of credit, though nothing was reduced to writing. The plaintiff tendered his resignation to Hesterman on September 10, 1991, which became effective on October 6, 1991. Thereafter, Hesterman refused to provide the line of credit.

Hesterman also refused the plaintiff's request for severance, bonus, and other benefits pursuant to First Chicago's staff reduction policy. Under the policy in effect at the time of the plaintiff's resignation, only salaried employees employed for at least 90 days immediately preceding the job elimination date would be eligible to receive the benefits. The policy further stated that it would not apply to "employees who voluntarily resign."

On May 10, 1994, the plaintiff brought the instant action. Count I of the complaint alleged misrepresentation against defendant First Chicago Corporation; count II alleged misrepresentation against Hesterman individually; and count III alleged promissory estoppel against all defendants. The defendants filed a motion to dismiss the complaint, arguing, *inter alia*, that section 2 of the Act (815 ILCS 160/2 (West 1994)) barred any action relating to an oral promise to extend credit. Relying on the opinion of the Appellate Court, Fourth District, in *First National Bank v. McBride Chevrolet, Inc.* (1994), 267 Ill. App. 3d 367, the trial court granted the defendant's motion and dismissed the complaint. The plaintiff timely appealed.

■ At issue on appeal is whether, in requiring credit agreements to be in writing, section 2 of the Act also precludes actions brought under the traditional exceptions to a Frauds Act defense. Characterized by one Federal court as "a stringent version of the Statute of Frauds" (*Whirlpool Financial Corp. v. Sevaux* (1994), 874 F. Supp. 181, 185), the Act imposes a writing requirement on claims stemming from any type of "credit agreement," defined as "an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards" (815 ILCS 160/1(1) (West 1994)). Section 2 of the Act provides that "[a] debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the

relevant terms and conditions, and is signed by the creditor and the debtor." (815 ILCS 160/2 (West 1994).) Despite this seemingly clear and unambiguous bar on actions "on or in any way related to" unwritten credit agreements, the plaintiff nonetheless contends that the long-standing common-law exceptions to the Frauds Act (740 ILCS 80/0.01 *et seq.* (West 1994)), including fraud and equitable estoppel, apply with equal force to the Act. We conclude that they do not.

The primary rule of statutory interpretation is to ascertain and give effect to the true intent and meaning of the legislature. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189.) Where an enactment is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Kraft*, 138 Ill. 2d at 189.

To date, only one reported Illinois Appellate Court decision has interpreted section 2. In *McBride Chevrolet*, 267 Ill. App. 3d 367, the defendants' counterclaim alleged, *inter alia*, estoppel and fraud in connection with a bank officer's failed promise to hold a check drawn on the corporate defendant's account, which resulted in the defendants being forced out of business. After first determining that the officer's promise was a credit agreement within the meaning of the Act (*McBride Chevrolet*, 267 Ill. App. 3d at 371-72), the court held that all of the defendants' claims—whether sounding in contract or tort—were barred by the Act (*McBride Chevrolet*, 267 Ill. App. 3d at 372). In reaching its decision, the court distinguished the language of the Frauds Act, which bars actions *upon* certain agreements which are not in writing. (740 ILCS 80/1 (West 1994); *McBride Chevrolet*, 267 Ill. App. 3d at 372.) By contrast, the language of the Act bars all actions by a debtor based on, *or related to*, an oral credit agreement. (815 ILCS 160/2 (West 1994); *McBride Chevrolet*, 267 Ill. App. 3d at 372.) Noting the broad wording of the Act, the court stated that "[t]here is no limitation as to the type of actions by a debtor which are barred by the Act, so long as the action is in any way related to a credit agreement," and held that "all actions which depend for their existence upon an oral credit agreement are barred by the Act." *McBride Chevrolet*, 267 Ill. App. 3d at 372.

■ We note that the situation presented here, unlike that in *McBride Chevrolet*, is altogether "typical of the disputes which caused the legislature to enact the statutory bar to actions by debtors on oral promises to lend money." (*McBride Chevrolet*, 267 Ill. App. 3d at 373.) Although the *McBride Chevrolet* court deemed it unnecessary to address the question presented here, we find the court's analysis persuasive to our resolution of the case at bar. The broad language of

the Act (*McBride Chevrolet*, 267 Ill. App. 3d at 372-73; see also *General Electric Capital Corp. v. Donogh Homes, Inc.* (N.D. Ill. December 14, 1993), No. 93—C5614) bars—without express exception—actions "on or in any way related to" unwritten credit agreements (815 ILCS 160/2 (West 1994)). That Illinois has long recognized common-law exceptions to the application of the Frauds Act (740 ILCS 80/0.01 *et seq.* (West 1994)) only highlights the legislature's failure to recognize those exceptions in the language of the Act itself. We cannot properly read such exceptions into the Act (see *Kraft*, 138 Ill. 2d at 189), as its language is clear and unambiguous (*McBride Chevrolet*, 267 Ill. App. 3d at 372).

Because the instant action involves an action by a debtor clearly "related to" an oral credit agreement within the meaning of the Act, we conclude that the trial court's dismissal of the plaintiff's complaint was proper.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DOYLE and COLWELL, JJ., concur.