JAY CREMER, Plaintiff-Appellee, v. CITY OF MACOMB BOARD OF FIRE AND POLICE COMMISSIONERS et al., Defendants-Appellants.

Third District    No. 3—95—0739

, Opinion filed June 3, 1996.

Jim D. Lucie (argued), of Lucie & Carper, of Macomb, for appellants.

Marcia F. Straub (argued), of Peoria, for appellee.

John C. Broihier, of Cowan & Minetz, of Naperville, for *amicus curiae*.

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

This administrative review proceeding raises the question whether section 10—2.1—14 of the Municipal Code (65 ILCS 5/10—2.1—14 (West 1992)) prohibits a board of fire and police commissioners from subjecting a job applicant to a psychological examination after the applicant is placed on an eligibility list. We hold that section 10—2.1—14 contains no such prohibition. Therefore, we reverse the circuit court's judgment.

The plaintiff, Jay Cremer, brought this proceeding for administrative review against the defendants, City of Macomb Board of Fire and Police Commissioners (Board) and the City of Macomb, after the Board rejected his application for employment in the Macomb fire department. As part of the employment application process, Cremer

took written and oral examinations in 1991 and did well enough to rank third on a final eligibility list that was posted in 1992. Later that year, Cremer was notified that he was to undergo "final" testing, including a psychological exam. Cremer submitted to the exam, from which the testing psychologist concluded that Cremer was hostile, belligerent, an introvert, suspicious, depressed, and would be a disruptive influence at the fire station. The Board informed Cremer that he did not meet its hiring requirements based upon the exam results.

After filing this action, Cremer moved for summary judgment on the ground that section 10—2.1—14 of the Municipal Code permitted boards of fire and police commissioners to administer only physical exams once a person had been placed on an eligibility list. The trial court agreed with Cremer's reading of section 10—2.1—14 and reversed the Board's decision. This appeal followed.

Division 2.1 of the Municipal Code sets forth the procedure by which boards of fire and police commissioners are to hire personnel. First, a board must administer public, competitive examinations; these exams must be practical and fair, and must test physical qualifications and health. 65 ILCS 5/10—2.1—6 (West 1992). A board may also impose reasonable hiring limitations relating to residence, health, habits and moral character. 65 ILCS 5/10—2.1—6 (West 1992). Once the exams are scored, the board must post an eligibility list showing the candidates' final grades, and vacancies must be filled from the list. 65 ILCS 5/10—2.1—14 (West 1992). Section 10—2.1—14 further provides that "[a]ppointment shall be subject to a final physical examination." 65 ILCS 5/10—2.1—14 (West 1992).

The question in this case is whether section 10—2.1—14, by its use of the language "[a]ppointment shall be subject to a final physical examination," allows the Board to give only a physical examination once a candidate has been placed on the list of eligible candidates. This is a question of first impression.

■ The object of statutory interpretation is to determine and give effect to the legislature's intent. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 593 N.E.2d 522 (1992). The statute's plain language should be given effect if unambiguous. *Piatak v. Black Hawk College District No. 503*, 269 Ill. App. 3d 1032, 647 N.E.2d 1079 (1995). If the statutory language is ambiguous, however, the court may look to other sources of legislative intent, including legislative history. *Knox County Board of Review v. Illinois Property Tax Appeal Board*, 185 Ill. App. 3d 530, 541 N.E.2d 794 (1989).

■ In this case, there is no question that the language "[a]ppointment shall be subject to a final physical examination" is ambiguous as to whether other types of examinations, including psychological

examinations, may be given once applicants are placed on a final eligibility list. The trial court read the language to mean that only physical examinations may be given once the lists are posted. To reach this result, the court apparently applied the maxim *expressio unius est exclusio alterius*—the mention of one thing implies the exclusion of another. The application of this maxim is justified, however, only if the language in question permits, but does not require, the administration of final physical examinations. If "[a]ppointment shall be subject to a final physical examination" means that boards *may* administer final physical examinations, the maxim might reasonably apply, with the result that boards *may not* give other types of tests. But if the language means that boards *must* give final physical examinations, the maxim cannot be applied to foreclose boards from giving other types of exams on a permissive basis. This is because a requirement to do one thing cannot be interpreted as a prohibition from doing something else, unless the two things are mutually exclusive.

■ At any rate, we need not determine whether the language in question requires or only permits boards to administer final physical exams. The maxim *expressio unius est exclusio alterius* is an aid to statutory construction and may give way if a clearer expression of legislative intent may be found elsewhere. See *Lehman v. Hill*, 414 Ill. 173, 111 N.E.2d 120 (1953). In this case, legislative history provides a clear expression of intent.

The sentence "[a]ppointment shall be subject to a final physical examination" was added to section 10—2.1—14 by Public Act 79—696. The sponsor of this amendatory law was Representative Palmer, who answered questions posed by Representatives Jaffe and Bluthardt on the House floor:

> "Jaffe: 'Would the ... would the gentleman yield to a question? Romie, I'm looking at the Digest over here, and it says on the final line of the Digest, "revised appointments shall be subject to a final physical examination," deleting "that it may include psychological and psychiatric tests." Could you explain what that means?'
>
> Palmer: 'Yeah, I ... ah ... originally in writing this bill, I thought it would be neat if ... ah ... there would be psychological examinations provided for the applicants. The fireman were greatly opposed to it for many reasons, the policemen were also, there's police organizations, and not without good reason, because you can't find a psychologist or a psychiatrist that can use the same ... ah ... standards of judgments on these things. So what might appear to one psychologist to be ... ah ... something that would ... ah ... that might deny ... ah ... the person ... unintelligible ... appointment to

another might not be so. So rather than to get into that hassle at this point, we decided to take it out.'

\* \* \*

Bluthardt: 'Ah . . . The last person, more or less, has dealt with the matter that I wanted to question you about. He didn't go quite far enough. Would this, in effect, prohibit the Police and Fire Commissions from actually requiring psychiatric and ... ah ... tests?'

Palmer: 'No, what we did, instead of mandating it, we just took it out. So there is [an] option. I believe it would be [an] option.'

Bluthardt: 'All right. It has been the practice of most commissions to require a psychological and psychiatric tests before a final ... ah ... grading in appointment to a police or fire department and in your opinion that has not been interfered with ...'

Palmer: 'No.'

Bluthardt: '... by your bill?'

Palmer: 'Only thing it says, "that the appointment shall be subject to a final physical examination." It does not say anything about the other two, but that is the other psychological examination. What I did say then in the original bill was deleted. So I would take it to mean that ... ah ... the board of fire and police commissioners probably still have some option on it.' " 79th Ill. Gen. Assem., House Proceedings, April 30, 1975, at 33-34.

We interpret the foregoing discussion to mean that Representative Palmer initially included in the bill an express provision allowing boards to give psychiatric and psychological examinations, but deleted that express language under pressure from police and fire organizations. In deleting that language, however, the legislature did not intend to interfere with the boards' then common practice of administering psychological and psychiatric exams; rather, the legislature simply did not want to expressly sanction the practice. Consistent with this legislative history, we hold that section 10— 2.1—14 of the Municipal Code does not forbid boards of fire and police commissioners from administering psychological or psychiatric examinations to applicants after the applicants have been placed on a final eligibility list.

For the foregoing reasons, we reverse the judgment of the circuit court of McDonough County and affirm the decision of the City of Macomb Board of Fire and Police Commissioners.

Reversed.

LYTTON and McCUSKEY, JJ., concur.