*In re* C. RODNEY YODER (C. Rodney Yoder, Petitioner-Appellant, v. The People of the State of Illinois, Respondent-Appellee).

Fifth District    No. 5—96—0412

Opinion filed June 24, 1997.

Jeff M. Plesko, of Guardianship and Advocacy Commission, of Anna, for appellant.

Darrell Williamson, State's Attorney, of Chester (Norbert J. Goetten, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

Petitioner Claude Rodney Yoder appeals from the May 29, 1996, order of the Randolph County circuit court granting the State's motion for a directed finding on his petition for discharge from the custody of the Chester Mental Health Facility. He asserts that the court erred because it (1) failed to appoint an independent examiner to assess his mental status, (2) denied his request for a jury trial, (3) refused to allow him to waive counsel and represent himself, and (4) granted the State's motion for a directed finding on his petition. He also asserts that appointed counsel provided him with ineffective assistance. We hold that petitioner failed to make a *prima facie* case for discharge and that the court properly found him unable to either waive counsel or represent himself, but that the court erred in denying his request in regard to an independent examination and in denying his request for a jury trial. In view of our rulings on these issues, we need not pass upon the issue of the effectiveness of counsel.

In a jury trial conducted on March 26, 1996, petitioner was found to be a person in need of continued involuntary commitment due to his presentation of a threat of danger to others. On May 23, 1996, he filed a *pro se* petition for discharge or modification of his commitment order, pursuant to the Mental Health and Developmental Disabilities Code (Code). 405 ILCS 5/1—100 *et seq.* (West 1994). The petition, which was unsupported by affidavits, alleged that the Department of Mental Health (Department) was no longer providing him with appropriate therapy as of March 28, 1996; that he had been removed from the case load of Sydelle C. Warshauer and placed in treatment with a therapist and a psychiatrist he described as "two litigants with [petitioner]"; that he was being provided with custodial care only; that mental health advocates were currently attempting to get appropriate care for him; that bogus allegations of misconduct had been made against him, thwarting a transfer to another unit in the system; that his current caregivers were attempting to prescribe inappropriate drug treatment for his mental problems; and that his mental status did not warrant his confinement in his current, restrictive placement. He demanded that his petition be set for a trial by jury, that counsel be appointed to represent him, and that an independent examiner be appointed to assess him.

The petition was set for hearing on May 29, 1996. Petitioner was represented by Rayburn Fricke, his appointed counsel at the time of the trial at which his involuntary commitment was continued. Counsel informed the court that, during his discussion with petitioner prior to the appearance, petitioner told him that he wished to represent himself and that he wanted a jury trial on the petition. The demand for a jury trial was denied by the court after the State asserted that the applicable statutes did not provide for a jury trial on petitions for discharge and counsel could cite no authority for petitioner's position. Petitioner's demand to represent himself was denied without the court making inquiry of petitioner.

When the court asked petitioner if he wished to testify, he asserted that he did want to do so, "but in a real legal proceeding, not a kangaroo proceeding." Petitioner, having told the court that he wanted to be represented by counsel, but not the one appointed for him, then left the courtroom. He asserted prior to his departure that he was not waiving any of his rights, but that the court was waiving them for him, and that he wanted to leave. Counsel presented no evidence, and the court granted the State's motion for a directed finding and denied the petition for discharge, based on petitioner's failure to present any evidence to substantiate the allegations of the petition.

## I

Petitioner maintains that, under section 3—804 of the Code (405 ILCS 5/3—804 (West 1994)), he had a right to be examined by an independent examiner to determine whether discharge or modification of his treatment was warranted. The State contends that, because petitioner failed to properly support his petition for discharge and present a *prima facie* case for discharge that the State would then be compelled to counter, the court was under no duty to appoint an independent examiner.

Petitioner cites the decision in *In re Katz*, 267 Ill. App. 3d 692, 642 N.E.2d 893 (1994), and the decision in *In re Barnard*, 247 Ill. App. 3d 234, 616 N.E.2d 714 (1993), in support of his assertion that he was entitled to an independent examiner. In *Katz*, although the reviewing court found that the respondent did not establish a *prima facie* case for discharge via her petition and testimony, it held that "nothing in the format for the procedure for a discharge hearing negates application of section 3—804 of the Code to entitle a respondent to an examination by an independent expert *before* a hearing on a petition for discharge." (Emphasis added.) *Katz*, 267 Ill. App. 3d at 696, 642 N.E.2d at 896. In *Barnard*, the respondent appealed from a finding that he was subject to continued involuntary admission to a mental health facility and raised, *inter alia*, the issue of whether he was entitled to an examination by an independent examiner who was not an employee of the Department of Mental Health. This court held that "section 3—804 of the Code applies *with equal force to both petitions for discharge* and petitions for involuntary admission" (emphasis added) (*Barnard*, 247 Ill. App. 3d at 249, 616 N.E.2d at 725) and found that an employee of the Mental Health Department was capable of performing an impartial examination. See also our decision in *In re Pates*, 99 Ill. App. 3d 847, 848, 426 N.E.2d 275, 278 (1981), where the respondent filed a petition for discharge on September 25, 1981, a State-employed psychologist examined him on September 30, 1981, and on October 1, 1981, defense counsel sought the appointment of an "impartial medical expert" to aid in the preparation for a hearing on his petition for discharge. We found that it was proper for an examiner employed by the State to provide an independent examination, in the absence of questions about his competence, his impartiality, or the thoroughness of his examination. *Pates*, 99 Ill. App. 3d at 850, 426 N.E.2d at 278.

■ We do not believe, given the precedent in *Katz*, that it is necessary for petitioner to first establish a *prima facie* case for discharge before he is entitled to appointment of an independent expert to examine him. However, we do not feel compelled to follow the court's

holding in *Katz* that the State must pay for an examiner chosen by a party petitioning for discharge, at State expense, who is not an employee of the Department of Mental Health. Our decision in *Barnard* reflects our continuing conviction that such a party is not entitled to choose his own appointed examiner and that an examiner who is affiliated with the Department of Mental Health is a proper, impartial examiner, in the absence of evidence to the contrary.

We find that petitioner was entitled to the appointment of an independent examination prior to the hearing on his petition for discharge and that the trial court erred when it failed to make the appointment.

## II

Petitioner next argues that he was entitled to have a jury hear his petition for discharge because, under section 3—901(b) of the Code, article VIII of chapter III of the Code, which governs court hearings, "applies to hearings held under this Section." 405 ILCS 5/3—901(b) (West 1994). The State contends that, because section 3—901 repeatedly indicates that the court shall control the setting of hearings and enter orders relating to petitions for discharge, the plain language militates in favor of holding that the jury trial provisions of section 3—802 (405 ILCS 5/3—802 (West 1994)) apply to adjudications of involuntary admission only.

■ Under section 3—802, "The respondent is entitled to a jury on the question of whether he is subject to *involuntary admission*." (Emphasis added.) 405 ILCS 5/3—802 (West 1994). In interpreting a statute, the objective of the court is to ascertain and give effect to the intent of the legislature, and the most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237, 664 N.E.2d 61, 65 (1996). If the statutory language is clear and unambiguous, the court should generally apply the statute without further aids to statutory construction. *People v. Bole*, 155 Ill. 2d 188, 197, 613 N.E.2d 740, 744-45 (1993). The plain language of section 3—802 would yield the conclusion that the right to a jury trial is afforded to only those parties who are the subject of involuntary admission to the Department.

■ However, given our decision in *Barnard*, in which we found that the independent examination provision of article VIII applies "with equal force" to petitions for discharge and petitions for involuntary commitment (*Barnard*, 247 Ill. App. 3d at 249, 616 N.E.2d at 725), we cannot hold that the right to a jury trial contained in that article does not apply to discharge proceedings. The language of sec-

tion 3—901(b) dictates this application, given the language "Article VIII of this Chapter applies to hearings held under this Section." 405 ILCS 5/3—901(b) (West 1994). Article VIII's right to a jury trial is clear:

> "The respondent is entitled to a jury on the question of whether he is subject to involuntary admission. The jury shall consist of 6 persons to be chosen in the same manner as are jurors in other civil proceedings." 405 ILCS 5/3—802 (West 1994).

Petitioner in this case seeks a discharge as he is currently committed against his will. Because his petition for discharge inherently concerns the subject of his involuntary commitment, we conclude that the right to a jury trial contained in section 3—802 applies to discharge proceedings. Therefore, we find that the trial court erred when it denied petitioner's request for a jury trial on his petition for discharge.

## III

■ Petitioner contends that, under section 3—805 of the Code (405 ILCS 5/3—805 (West 1994)), the court erred by refusing to allow him to represent himself. This section allows a party to waive counsel and represent himself if "the court is satisfied that the [party] has the capacity to make an informed waiver of his right to counsel." 405 ILCS 5/3—805 (West 1994).

When petitioner's counsel first addressed the court, he stated that petitioner wished to represent himself on the petition. After the court denied that request, petitioner complained that attorney Fricke had not consulted with him at sufficient length, and the following exchange took place.

> "THE COURT: Mr. Yoder, you have been down this road so many times, you know this procedure as well as I do. Do you want to testify here today, Mr. Yoder?
>
> [MR.] YODER: Yeah. *I would like to be represented by counsel, your Honor.*" (Emphasis added.)

The court denied petitioner's request for counsel other than attorney Fricke, and petitioner left the hearing after a heated exchange in which he declined to be sworn and to testify.

Petitioner asserts that under *In re Click*, 196 Ill. App. 3d 413, 422-23, 554 N.E.2d 494, 500 (1990), the court had an affirmative duty to make inquiries to ascertain whether or not he was capable of waiving his right to counsel and proceeding *pro se*, whether the request was voluntary, the specifics of the request, and whether he had the requisite legal or educational background to represent himself.

The State argues that the exchange in which petitioner asked to

be represented by counsel indicated that petitioner intended to abandon his request to represent himself and that he was attempting only to substitute some other counsel for attorney Fricke. In the alternative, the State contends that, because petitioner had been found incompetent to waive counsel or to represent himself at the March 25, 1996, hearing on the petition for continued involuntary commitment, the court could logically conclude that he continued to be unfit, particularly since the court was well acquainted with petitioner from past proceedings. It asserts that petitioner's display of temper, which culminated in his exit from the proceedings, supports the conclusion that he was unable to make informed decisions concerning the proceedings.

In *In re Denby*, 273 Ill. App. 3d 287, 290-91, 653 N.E.2d 73, 76 (1995), the court found that the respondent was not prejudiced by his waiver of counsel at the hearing on his petition for discharge despite the fact that the court did not question the respondent to determine whether he was competent to make that waiver. However, the court noted that the better policy is for the trial court to ask a few questions of the respondent to make certain that he understands the consequences of waiving counsel, but that it could not say that reversal was required on every occasion in which the trial court failed to do so, given that it was a discretionary call. *Denby*, 273 Ill. App. 3d at 290-91, 653 N.E.2d at 76.

Although we, too, believe that it would have been appropriate for the court to make inquiry of petitioner in this case, given the history which the court and petitioner shared and the very recent determination that he was not capable of waiving counsel and proceeding *pro se*, we do not conclude that the court erred on this point. We would, however, suggest that the court be more careful in making such determinations in the future in order to minimize distress to the party seeking discharge and to delete at least one issue from the appeals that will arise from proceedings such as this one.

## IV

■ Petitioner next asserts that the trial court committed reversible error because it granted the State's motion for a directed finding. He argues that, although the matter was not properly argued to the court at the time of the hearing, his petition was sufficient on its face to constitute a *prima facie* case for discharge or review of the order under which he was being treated and to compel the State to prove by clear and convincing evidence that he should continue to be subject to involuntary admission in the system and placement in the most secure forensic mental facility in the state.

The party seeking discharge from confinement has the burden of proving a *prima facie* case for discharge, after which point the State has the burden of proving by clear and convincing evidence that discharge should be denied. *In re Katz*, 267 Ill. App. 3d 692, 695, 642 N.E.2d 893, 895 (1994). In *Katz*, the petitioner was sworn and testified in support of her petition; which was found to be insufficient to establish that she had a right to discharge. The reviewing court in *In re Smoots*, 189 Ill. App. 3d 289, 291, 544 N.E.2d 1235, 1237 (1989), found that the *sworn* statements of a person who has been found subject to involuntary admission under the Code constitute a *prima facie* case for discharge. *In re Smoots*, 189 Ill. App. 3d 289, 291, 544 N.E.2d 1235, 1237 (1989). In the instant case, petitioner's petition itself was not verified, nor was it accompanied by an affidavit attesting to the truth of the allegations contained therein. Moreover, although the court attempted to persuade petitioner to be sworn in order that he might testify in support of his petition, petitioner refused to be sworn and absented himself from the hearing on the petition, leaving counsel, who had intended to present only petitioner's testimony, to stand on the unverified petition. We cannot conclude on the basis of this record that petitioner established a *prima facie* case such that the burden of proof shifted to the State. The court thus was not in error when it granted the State's motion.

Because this matter must be returned to the circuit court of Randolph County for further proceedings, we need not address petitioner's contention that he was afforded ineffective assistance of counsel.

Reversed and remanded.

GOLDENHERSH, J., concurs.

WELCH, J., specially concurring in part and dissenting in part:

I agree that under this court's decision in *Barnard* petitioner was entitled to the appointment of an independent medical examiner to determine if he continued to be subject to involuntary commitment in connection with his petition for discharge. I also concur in the majority's holding that the trial court properly refused to allow petitioner to waive counsel and that a directed finding for the State was appropriate, as well as its determination that we need not address the issue of counsel's representation. I write separately because I do not believe that the extension of the *Barnard* decision by the majority is warranted and that petitioner was not entitled to a jury trial to determine whether he was entitled to discharge from the Department. I respectfully dissent from that portion of the majority's opinion which holds that he is so entitled.

Under section 3—802 of the Code, "The respondent is entitled to a jury on the question of whether he is subject to *involuntary admission.*" (Emphasis added.) 405 ILCS 5/3—802 (West 1994). The majority concedes that, in interpreting a statute, the objective of the court is to ascertain and give effect to the intent of the legislature and that the most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237, 664 N.E.2d 61, 65 (1996). Although in *Barnard* we found that the independent examination provision of article VIII applies "with equal force" to petitions for discharge and petitions for involuntary commitment (*Barnard*, 247 Ill. App. 3d at 249, 616 N.E.2d at 725), it does not necessarily follow that the right to a jury on the question of whether a respondent is subject to involuntary admission contained in that article should be extended to discharge proceedings.

Section 3—804 states that "[a]ny such physician ***, whether secured by the respondent or appointed by the court, may interview by telephone or in person any witnesses or other persons *listed in the petition for involuntary admission.*" (Emphasis added.) 405 ILCS 5/3—804 (West 1994). Logically, an independent examiner for purposes of *either* an initial involuntary admission or a discharge proceeding would benefit from access to a person who had input to the initial petition for involuntary admission.

The language of section 3—802, however, cannot be read so broadly. It states without equivocation, ambiguity, or the possibility of other interpretation that a respondent is entitled to a jury on the question of whether he is subject to *involuntary admission.* The plain language of section 3—802 yields the conclusion that the right to a jury trial is afforded to only those respondents who are the subject of involuntary admission to the Department. The maxim *expressio unius est exclusio alterius* is an aid to statutory construction, although it may give way if a clearer expression of legislative intent may be found elsewhere (*Cremer v. City of Macomb Board of Fire & Police Commissioners*, 281 Ill. App. 3d 497, 499, 666 N.E.2d 1209, 1211 (1996)), which I do not find in this instance. Courts are not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Klem v. First National Bank*, 275 Ill. App. 3d 64, 67, 655 N.E.2d 1211, 1213 (1995). A statute that specifies one exception to a general rule excludes other exceptions by implication (*In re Application of the County Collector*, 281 Ill. App. 3d 467, 473, 667 N.E.2d 109, 114 (1996)), even in the absence of negative words of prohibition. *Stern v. Norwest Mortgage, Inc.*, 284 Ill. App. 3d

506, 509, 672 N.E.2d 296, 300 (1996), *appeal allowed*, 171 Ill. 2d 586, 677 N.E.2d 972 (1997).

Applying these principles to the case at bar, I believe that the language of section 3—802 excludes the provision of a jury trial to determine if a person who files a petition for discharge should be subject to continued involuntary admission by the Department. To hold otherwise would be inconsistent with the stated intent of the legislature, to which the courts must give effect without considering additional indicia of legislative intent. *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 181, 651 N.E.2d 1105, 1112 (1995). The language of section 3—901(b) does not preclude this application, given that the references to "the court" contained therein are ones that deal with administrative activities which are within the purview of the court, setting petitions for hearing, directing that notice be given of that hearing, and entering orders. None of these activities are ones that a jury may do in any event. Therefore, I would find that the trial court properly denied petitioner's request for a jury trial on his petition for discharge. For the reasons indicated, I concur in part and dissent in part.