*In re* DENNIS D., Found to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Dennis D., Respondent-Appellant).

First District (5th Division)    No. 1—98—1775

Opinion filed February 11, 1999.

Ellen Holden Clark, William E. Coffin, and John B. Lower, all of Guardianship & Advocacy Commission, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Margaret J. Campos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Respondent Dennis D. appeals from a jury verdict finding him subject to involuntary admission and the trial court's order of hospitalization pursuant to the Mental Health and Developmental

Disabilities Code (Mental Health Code) (405 ILCS 5/1—100 *et seq.* (West 1996)). On appeal, he contends that his involuntary admission must be reversed because the trial court erred when it denied counsel's motion to withdraw and refused his request to represent himself without first ascertaining whether he had the capacity to make an informed waiver as required by section 3—805 of the Mental Health Code (405 ILCS 5/3—805 (West 1996)).

For the reasons that follow, we reverse.

On April 3, 1998, a social worker signed a petition for respondent's involuntary admission, and a trial by jury was set for May 5, 1998. On May 4, 1998, respondent informed his counsel that he did not wish her to represent him at trial. Counsel moved for leave to withdraw prior to trial and informed the court that respondent intended to proceed *pro se.*

On the day of trial, counsel informed the court that she was unable to prepare her defense because respondent had refused to permit her to review his medical chart. Counsel indicated that she had told respondent that she would have to withdraw if she could not prepare, and respondent said he did not want her representation. Counsel also indicated that she believed that she and respondent differed with regard to trial strategy, but she did not really know why respondent wanted her to withdraw. Respondent had informed her that he wanted to proceed with the trial without representation.

The trial court denied the motion, respondent objected, and the court repeated that the motion was denied. Respondent then said that, "She looked into my files and talked about my mother. I do not want her as my lawyer." The court again stated that the motion was denied, and they were going to proceed.

After *voir dire*, respondent said, "I want my lawyer fired. I refuse to have her as my lawyer. I will represent myself. Or, I will not participate in anything." When the trial court again stated that respondent's motion had been denied, respondent stated that the process was "illegal," and he did not accept it. The trial court offered to excuse respondent, who countered that the court could arrest him and the court could not "force [him] to stay here." Respondent, again stating that the proceeding was illegal if he could not represent himself, was escorted from the courtroom. The trial court told the jury that respondent had a right to waive his presence and that it should not be taken "as any kind of evidence or testimony."

At the trial that followed, the evidence established that respondent suffered from a schizoaffective disorder, bipolar type. Respondent had threatened hospital staff and had attempted suicide. His attending psychiatrist predicted that respondent's behavior would worsen

because of respondent's unpredictability and increased agitation. The jury returned a verdict finding respondent subject to involuntary admission and the court ordered respondent committed.

■ Respondent contends that the trial court erred in refusing his counsel's motion to withdraw and his request to represent himself. Section 3—805 of the Mental Health Code provides as follows:

"Every respondent alleged to be subject to involuntary admission shall be represented by counsel. If the respondent is indigent or an appearance has not been entered on his behalf at the time the matter is set for hearing, the court shall appoint counsel for him. A hearing shall not proceed when a respondent is not represented by counsel unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel." 405 ILCS 5/3—805 (West 1996).

Respondent argues that this statute and relevant case law require reversal in this case because the trial court denied his requests to proceed *pro se* without any inquiry as to his capacity to waive counsel.

■ In *In re Phyliss P.*, 182 Ill. 2d 400, 401 (1998), the supreme court reaffirmed the well-established rule in Illinois that all adults are presumed legally competent to direct their legal affairs. The supreme court found it improper for the appellate court to require individuals who had been adjudicated mentally ill to file certificates demonstrating their legal competency before the court would dismiss their appeals. *Phyliss*, 182 Ill. 2d at 403. Although the individuals had been adjudicated mentally ill pursuant to the Mental Health Code, the court stated that

"they nevertheless enjoy a presumption of competency to direct their legal affairs. As the Mental Health Code explicitly provides, '[n]o recipient of services shall be presumed legally disabled ***.' 405 ILCS 5/2—101 (West 1996). Underlying this presumption is the distinction between mental illness and the specific decisional capacity to exercise or waive legal rights. ***

\* \* \*

*** [A]n adjudication of mental illness is not an adjudication of incompetence to direct one's legal affairs." *Phyliss*, 182 Ill. 2d at 402-03.

In *In re Barbara H.*, 183 Ill. 2d 482 (1998), the supreme court recently reviewed a decision of this court that held that section 3—806 of the Mental Health Code (405 ILCS 5/3—806 (West 1996)), which authorizes an attorney to waive his or her client's right to be present during commitment proceedings, was unconstitutional. The supreme court rejected this court's ruling on the constitutional issue, but affirmed the reversal of the circuit court's judgments because the

requirements of the Mental Health Code had not been satisfied at the hearing on the petition for the involuntary admission of Barbara. *Barbara*, 183 Ill. 2d at 486. Barbara was not present during the proceedings and a public defender appointed by the court had waived her appearance. The supreme court ruled that Barbara was denied her statutory right to counsel where a public defender was appointed without a showing that Barbara was unable to afford her own attorney, Barbara refused the public defender's assistance and claimed to have secured other representation, and the trial court accepted the public defender's waiver of Barbara's presence at the hearing without any basis for believing that Barbara was incapable of making a decision as to who should represent her. *Barbara*, 183 Ill. 2d at 494-95. The supreme court cited *Phyliss*, 182 Ill. 2d at 400, recognizing that Barbara must be presumed competent to make legal decisions. *Barbara*, 183 Ill. 2d at 495. "Pursuant to section 3—805, citizens of Illinois who are subject to involuntary commitment *** are entitled to be represented by counsel of their choice, when they are capable of obtaining it. They are even entitled to represent themselves, if they are capable of making an informed waiver of their right to counsel." *Barbara*, 183 Ill. 2d at 495.

It is in the context of these recent supreme court rulings that we review the trial court's decision in the instant case. The record reveals that respondent informed his counsel that he did not want her to represent him in the commitment proceedings and respondent's counsel moved for leave to withdraw. On the day of the hearing, counsel informed the court that she was unable to prepare a defense because respondent had refused to allow her to review his medical chart. The trial court denied the motion to withdraw, respondent objected, and the court repeated that the motion was denied. After *voir dire*, respondent again stated that he wanted his attorney fired and wanted to represent himself or he would not participate. The court again denied the motion without making a finding as to respondent's capacity. However, because it denied the motion, the court's ruling implicitly held that the court was not satisfied that respondent had the capacity to waive his right to counsel.

In *In re Click*, 196 Ill. App. 3d 413 (1990), Click's appointed counsel informed the court at a hearing for involuntary commitment that Click wished to proceed *pro se*. The following exchange occurred:

" 'THE COURT: Mr. Click, is that correct, you do not wish to be represented by *** your appointed counsel?

RESPONDENT: That's correct, sir.

THE COURT: That's your free wish to do, is that correct?

RESPONDENT: I believe it is.

THE COURT: You choose to represent yourself?

RESPONDENT: I choose to.

THE COURT: Well, this is what I will do. I will find you knowingly waive your right to counsel. I will allow you to proceed [*sic*] as your counsel; however I will order [counsel] to remain there at the counsel table and that if you have any questions you can ask him.' " *Click*, 196 Ill. App. 3d at 416.

The trial court then informed Click that he could ask the public defender questions if he wished.

On appeal, Click argued that the trial court erred when it allowed him to represent himself at his mental health hearing. Despite the fact that counsel remained in the courtroom, this court ruled that Click waived his right to counsel and then determined that the trial court abused its discretion in finding a knowing waiver of counsel by Click. The court stated:

"[T]he [trial] court did little to determine [Click's] capacity to make such a decision. The record shows that the court's inquiry was limited to three questions, basically the same, asking respondent if he wished to represent himself. No preliminary questions were posed to [Click] concerning his mental ability or intelligence, or even as to his understanding of the basic purpose of counsel. Even though [Click] was confused by the court's statements concerning the waiver of counsel, the court simply repeated the procedure once, and then apparently became irritated and refused to answer any more questions. The very nature of the hearing, [Click's] confusion, and [Click's] actions during the hearing should have made the court question whether [Click] had the capacity to make an informed waiver of counsel." *Click*, 196 Ill. App. 3d at 423.

In the end, this court ruled that Click did not have the capacity to waive counsel and for this and another reason the court reversed and remanded the case. *Click*, 196 Ill. App. 3d at 425.

In *In re Tiffin*, 269 Ill. App. 3d 581 (1995), Tiffin appeared with counsel at the commencement of a hearing on a petition seeking his involuntarily commitment, but then requested the right to represent himself. The trial court excused counsel. After the State offered one witness and Tiffin testified on his own behalf indicating that he wrote poetry and songs while in the hospital, the trial court concluded that Tiffin was subject to involuntary commitment. *Tiffin*, 269 Ill. App. 3d at 584. Relying on *Click*, the appellate court stated that discharging counsel without a determination of the respondent's understanding of the ramifications of his decision to proceed *pro se* was reversible error. *Tiffin*, 269 Ill. App. 3d at 586. Like *Click*, no preliminary questions were asked of Tiffin to assess his mental ability or intelligence or his

understanding of the purpose of counsel. Tiffin was prejudiced by the trial court's failure to inquire into his knowledge of the consequences of waiving his right to counsel and representing himself, and the trial court's abuse of discretion required reversal of the commitment order. *Tiffin*, 269 Ill. App. 3d at 586.

The trial court in the instant case failed to inquire as to respondent's capacity to make a meaningful or informed decision as to waiver of counsel. Respondent contends this failure requires reversal.

In *In re Denby*, 273 Ill. App. 3d 287, 288 (1995), Denby petitioned for discharge from a mental health facility. At the beginning of the hearing, Denby's counsel stated that Denby did not wish to be represented by him. Denby's attorney remained at the counsel table during the entire proceedings. When the court ordered Denby to proceed and inquired if Denby had any further evidence, Denby stated only that he had presented all his evidence in his petition. *Denby*, 273 Ill. App. 3d at 289. This court determined that although counsel remained at the counsel table and although Denby's brother, his guardian, did question a witness during the proceedings, Denby had waived his right to counsel. *Denby*, 273 Ill. App. 3d at 290. This court held that while the trial court allowed Denby to waive his right to counsel without questioning him to determine whether Denby was competent to make that waiver, Denby "was not prejudiced by his waiver of counsel." The court stated:

"Unlike the respondents in *Click* and *Tiffin*, respondent did not offer any testimony to the court which clearly manifested his mental illness. Moreover, respondent's guardian and the trial judge both questioned the State's witness to determine whether respondent was in fact subject to involuntary commitment and whether hospitalization remained the least restrictive treatment alternative for respondent. We recognize this is a close case, but we are unwilling to say the trial court abused its discretion given the facts of this case. While the better policy is for the trial court to ask a few questions of the respondent to make certain the respondent understands the consequences of waiving his or her counsel, we cannot say reversal is required on every occasion in which the trial court has failed to do so." *Denby*, 273 Ill. App. 3d at 291.

The court affirmed the denial of the petition for discharge.

As discussed, the trial court in the instant case did not inquire as to respondent's capacity before determining his capacity to make a decision as to his representation. The State contends, based on *Denby*, this court should affirm the lower court's decision because respondent suffered no prejudice from the failure. We disagree. The proper inquiry is not whether respondent suffered prejudice by proceeding with

counsel during the hearing, but whether respondent suffered prejudice from the court's failure to inquire as to his capacity. We find that respondent suffered prejudice as a result of the trial court's failure to inquire because the record does not support the conclusion that respondent lacked capacity to waive counsel. Without such an inquiry, the record in this case does not support the trial court's determination that respondent lacked capacity.

The parties cite one case that is factually similar to the case at hand. In *In re Yoder*, 289 Ill. App. 3d 465 (1997), Yoder filed a *pro se* petition for discharge or modification of a commitment order. Appointed counsel informed the court that Yoder wished to represent himself at the hearing, but the request was denied without an inquiry. *Yoder*, 289 Ill. App. 3d at 467. Yoder complained that his attorney had not consulted with him at sufficient length. The court denied Yoder's request for counsel other than the attorney that had been appointed, and Yoder left the hearing after a heated exchange in which he declined to be sworn and to testify. *Yoder*, 289 Ill. App. 3d at 470.

On appeal, Yoder argued that based on *Click* the court had an affirmative duty to make inquiries to ascertain whether he was capable of waiving his right to counsel and proceeding *pro se*, whether the request was voluntary, the specifics of the request, and whether he had the requisite legal or educational background to represent himself. *Yoder*, 289 Ill. App. 3d at 470. The State argued that because Yoder had been found incompetent to waive counsel or to represent himself at an earlier hearing on the petition for continued commitment, the court could logically conclude that he continued to be unfit, particularly since the court was acquainted with Yoder from past proceedings. *Yoder*, 289 Ill. App. 3d at 471. This court stated:

> "Although we *** believe that it would have been appropriate for the court to make inquiry of petitioner in this case, given the history which the court and petitioner shared and the very recent determination that he was not capable of waiving counsel and proceeding *pro se*, we do not conclude that the court erred on this point. We would, however, suggest that the court be more careful in making such determinations in the future in order to minimize distress to the party seeking discharge and to delete at least one issue from the appeals that will arise from proceedings such as this one." *Yoder*, 289 Ill. App. 3d at 471.

■ While *Yoder* involves a refusal by the trial court of a party's request to proceed *pro se*, the case is factually distinguishable. The *Yoder* court concluded that the trial court did not err because it found no abuse of the trial court's discretion in determining that respondent lacked capacity to waive counsel given all of the facts in the record.

The instant case, however, does not immediately present facts to support the trial court's conclusion that respondent lacked capacity. There was no ongoing relationship between the court and respondent. This was his first appearance, and the court had only unproven allegations in the petition of his mental illness which should not have been relied upon when ruling upon the issue of his capacity to make legal decisions. Further, there is nothing in the record indicating that respondent's behavior in the courtroom supported the court's determination. Respondent stated his objections to the court and raised his hand when he sought the court's attention. If there was some nonverbal action that led to the court's determination, it should have been noted, thus making it a part of the record for this court's review.

We hold that the record does not support the trial court's determination that respondent lacked capacity to waive his right to counsel. There is simply insufficient information upon which the trial court could have made that determination. Our decision today is buttressed by the supreme court's rulings in *Phyliss* and *Barbara* that emphasize the presumption that all persons in this state are presumed competent to make legal decisions. While an individual should not be allowed to disrupt or unreasonably delay commitment proceedings, the court has various statutory obligations to an individual facing involuntary commitment. As recognized by the supreme court, these are important obligations for the protection of liberty interests. We reiterate today what prior cases have sought to emphasize: the trial court should make some inquiry as to whether a respondent understands the consequences of waiving counsel before ruling upon his or her capacity to do so.

■ On a final note, we observe that the underlying judgment was entered on May 5, 1998, and indicates that it was valid for no more than 180 days. While the parties do not address this issue and the record does not contain any further information as to respondent's status, it appears that the period of the commitment order has passed. Nevertheless, as the supreme court ruled in *Barbara*, 183 Ill. 2d at 491-92, we hold that the case falls within the exception to the mootness doctrine as a case that involves an event of short duration that is capable of repetition, yet evading review. Therefore, we do not find the case moot and find it appropriate for review.

For the aforementioned reasons, the order of the circuit court is reversed.

Reversed.

HOURIHANE, P.J., and THEIS, J., concur.