17 December 1999

No. 3--98--0765

                                                                  

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the Circuit Court

   ) of the 10th Judicial Circuit

Plaintiff-Appellee,   ) Peoria County, Illinois

   )

v.   ) No. 77-CF-565

   ) 

JOHNNY LEE SAVORY,   ) Honorable 

   ) Robert A. Barnes

Defendant-Appellant.   ) Judge Presiding

                                                                  

JUSTICE LYTTON delivered the opinion of the court: 

                                                                 

A jury convicted defendant Johnny Lee Savory on two counts of murder.  Defendant subsequently filed a motion for scientific testing under section 116-3 of the Code of Criminal Procedure of 1963 (Code)(725 ILCS 5/116-3 (West 1998)).  The trial court denied the motion.  Defendant appeals, claiming that polymerase chain reaction amplification (PCR) testing, unavailable at the time of his trial, will produce materially relevant evidence of his “actual innocence.”  We affirm.  

I. 
FACTS

James Robinson and Connie Cooper were siblings, living 
together with their parents.  On the morning of January 18, 1977, James and Connie’s parents left for work.  Later that day, one of the parents discovered the bodies of James and Connie inside the home.  Each of the victims had been stabbed to death.  

Defendant had been an acquaintance of James and admitted to being in the home on the day of the killings.  Defendant stated that he and James had been practicing karate techniques.  Defendant had knowledge of the crime scene as it appeared on the morning of the murders 
e.g.
, he knew that a television set had been moved to the floor; he knew that Connie’s two year old child was in a bedroom; and he also knew that James had eaten corn and hot dogs.  Further, he admitted that he had “accidentally cut” James.  Defendant owned a smooth blade knife, which the police recovered.  The knife, which had blood stains on it, was consistent with the weapon used to kill James and Connie.  The police also recovered a pair of blue pants from defendant’s home.  The pants had a type A blood stain on them, the same blood type as Connie.  Defendant’s father claimed that the pants were not defendant’s, but instead belonged to him and that he was responsible for the stain.       

Defendant was charged with two counts of murder, and he was  convicted on both.  The trial court sentenced defendant to the department of corrections for a term of forty to eighty years.  On direct appeal, the second district appellate court affirmed defendant’s convictions.  Defendant then petitioned for post-

conviction relief and for a writ of habeas corpus, both of which were denied.   

In 1998, defendant filed a motion for scientific testing under section 116-3 of the Code.  At the time of defendant’s trial, in 1977, PCR testing was unavailable.  Through PCR testing, which is now accepted in the scientific community as a reliable method of DNA testing (see 
People v. Pope
, 284 Ill. App.3d 695, 703, 672 N.E.2d 1321, 1327 (1996)), defendant sought to establish that the blood on the pants could not have come from Connie.  Defendant also moved for PCR testing of fingernail scrapings allegedly taken from the victims.  He claimed that the testing would establish that any DNA recovered from under the victims’ fingernails could not have come from him
.  The trial court denied the motion on both grounds.
    

II. 
SECTION 116-3

Defendant argues that PCR testing of the blood stains on the pants recovered from his home and of the victims’ fingernail scrapings will produce evidence materially relevant to his claim of actual innocence.

Initially, the State responds that this court does not have jurisdiction over defendant’s appeal because neither the Illinois Constitution nor the supreme court has provided for the appeal of final orders.  Substantively, the State contends that DNA testing of the blood stained pants will not produce new, noncumulative evidence materially relevant to defendant’s assertion of actual innocence.  The State claims that even if the blood on the pants did not belong to Cooper, there is sufficient evidence to support defendant’s conviction.  Finally, the State argues that defendant has failed to make a 
prima
 
facie
 showing that fingernail scrapings were ever taken from the victims and, if they were, that they are still in existence.  

A. 
JURISDICTION

Final orders are appealable as of right.  
In re Marriage of Walters
, 129 Ill. App.3d 1040, 1042, 473 N.E.2d 580, 582 (1985).  The appealability of an order is determined by its substance, not its form.  
Branch v. European Autohaus, Ltd.
, 97 Ill. App.3d 949, 951, 424 N.E.2d 6, 8 (1981). 
 An order is final and appealable if it 
disposes of the litigation.  
In re Marriage of Walters
, 129 Ill. App. 3d at 1042, 473 N.E.2d at 582.  

An order denying a motion for DNA testing which was unavailable at the time of trial terminates a defendant’s right to that testing.  Under these circumstances, a defendant is left with no additional means of vindication.  In order to protect defendant’s interests, a review of the trial court’s determination is necessary.  See 
Kahle v. John Deere Co.
, 104 Ill.2d 302, 306, 472 N.E.2d 787, 789 (1984)(Without review, “no court will be able to determine whether the trial judge * * * correctly entered an order dismissing the case without prejudice.”)  Accordingly, we reject the State’s argument that defendant’s claim must fail for want of jurisdiction.  

B. 
STANDARD OF REVIEW

Both defendant and the State claim that the appropriate standard of review is 
de
 
novo
.  We agree.
  A 
de
 
novo
 standard is generally used where a trial court’s decision is made as a matter of law.  See 
Thorson v. La Salle National Bank
, 303 Ill. App.3d 711, 714, 708 N.E.2d 543, 545 (1999); 
Department of Transportation v. Chicago Title and Trust Co.
, 303 Ill. App.3d 484, 495, 707 N.E.2d 637, 645 (1999).   

Here, the trial court’s decision was based on the pleadings and a review of the transcripts.  
Because the court’s ruling was not based on the credibility of witnesses, but instead on the documents before it, the trial court was in no better position than this court is to decide the merits of defendant’s motion.  See, 
e.g
., 
People v. Coleman
, 183 Ill.2d 366, 388-389, 701 N.E.2d 1063, 1075 (1998)
(dismissal of a 
post-conviction petition without an evidentiary hearing is reviewed 
de
 
novo
);
 
American Country Insurance Co. v. Kraemer Brothers, Inc.
, 298 Ill. App.3d 805, 810, 699 N.E.2d 1056, 1059 
(1998)
(summary judgment reviewed 
de
 
novo
.)
  Therefore, we review 
de
 
novo
. 

C. 
ACTUAL INNOCENCE

We must now consider the meaning of the term “actual innocence,” as used in section 116-3.  
Section 116-3 of the Code states that, 

“(a) A defendant may make a motion * * * for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial.”

* * *

(b) The defendant must present a prima facie case that:

* * * 

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any 

material respect.

(c) the trial court shall allow the testing * * * upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant’s assertion of actual innocence.”    

Statutory language should be given its plain and ordinary meaning.  
Cremer v. City of Macomb Board of Fire and Police Commissioners
, 281 Ill. App.3d 497, 499, 666 N.E.2d 1209, 1210 (1996).  The goal of statutory construction is to effectuate the language and intent of the legislature.  
People v. Frieberg
, 147 Ill.2d 326, 345, 589 N.E.2d 508, 517 (1992).  In determining intent, a court may consider the reason and necessity of the law, the evil sought to be remedied and the purpose to be achieved.  
Friedberg
, 147 Ill.2d at 345, 589 N.E.2d at 517.  Where statutory language is clear, the language will be given effect without reliance on extrinsic aids.  
City of East Peoria v. Illinois Pollution Control Board
, 117 Ill. App.3d 673, 679, 452 N.E.2d 1378, 1382 (1983).  Statutory construction is a question of law
.  
Branson v. Department of Revenue
, 168 Ill.2d 247, 254, 659 N.E.2d 961, 965 (1995).  

Section 116-3(c)(1) states that the scientific testing must have “the potential to produce new, noncumulative evidence materially relevant to the defendant’s assertion of actual innocence.”  
Although relatively new, several cases have addressed the breadth of this provision.  In 
People v. Gholston
, 297 Ill. App.3d 415, 421-422, 697 N.E.2d 375, 380 (1998),
 a jury convicted defendant of various sexual offenses after hearing testimony from the victim that defendant and five other males had sexually assaulted her.  Defendant subsequently petitioned for DNA testing.
  Although the court focused on defendant’s free standing claim of innocence, it noted the applicability of section 116-3, stating that “DNA testing may yield conclusive information as to the actual innocence of a wrongly accused criminal defendant.  However, in this case, a negative DNA match would not exculpate defendant * * *.”  
Gholston
, 297 Ill. App.3d at 421-422, 697 N.E.2d at 380.
  In that case, DNA testing could not conclusively establish defendant’s guilt or innocence; defendant was only one of six attackers, and there was no evidence that defendant had ejaculated in the victim.  
Gholston
, 297 Ill. App.3d at 421-422, 697 N.E.2d at 380.
  Therefore, defendant’s claim of actual innocence was without merit.  
Gholston
, 297 Ill. App.3d at 422, 697 N.E.2d at 380.
  

In 
People v. Dunn
, No. 1-98-0284 (June 22, 1999), defendant was originally convicted of rape in 1979; he petitioned for post-

conviction relief, asserting a free standing claim of innocence.  Defendant contended that he was entitled to DNA testing which was unavailable at the time of his trial.  
The court stated that “[d]efendant has provided no supporting evidence of his actual innocence, but only asserts that such testing would ‘cast doubt on his identity as the offender.’”  
Dunn
, No. 1-98-0284, slip op. at 8.
  The court held that under section 116-3, review of DNA results is appropriate where “such testing may be dispositive” of defendant’s guilt or innocence.  
Dunn
, No. 1-98-0284, slip op. at 10-12.  Without adequate facts before it, t
he court needed to remand defendant’s case for additional proof.  
In doing so, the court distinguished 
Gholston
, stating that “[i]n the instant case, as opposed to 
Gholston
, there was only one attacker, and the court made no finding as to whether there was evidence that the assailant ejaculated during the attack.”  
Dunn
, No. 1-98-0284, slip op. at 11.
  The court believed that, if ejaculation had occurred, and the evidence was preserved, defendant’s request for testing should be granted because it would have the potential to establish defendant’s innocence.  
Dunn
, No. 1-98-0284, slip op. at 11-12.
   

In addition to 
Gholston
 and 
Dunn
’s interpretation of “actual innocence,” we are guided by the Supreme Court’s use of the term in a “narrow class of cases * * * implicating a fundamental miscarriage of justice.”  See
 
McClesky v. Zant
, 499 U.S. 467, 494, 113 L. Ed.2d 517, 544-545, 111 S. Ct. 1454 
(1991).  In 
Sawyer v. Whitley
, 505 U.S. 333, 340, 120 L. Ed.2d 269, 280-281, 112 S. Ct. 2514
 
(1992)
, the court elaborated on the term actual innocence, stating that,     

“[a] prototypical example of ‘actual innocence’ in a    

colloquial sense is the case where the State has convicted     the wrong person of the crime.  Such claims are of course 

regularly made on motions for new trial, and quite regularly       denied because the evidence adduced in support of them fails    to meet the rigorous standards for granting such motions.          But in rare instances it may turn out later, for example,    

that another person has credibly confessed to the crime, and     it is evident that the law has made a mistake.”  
Sawyer
, 505       U.S. at 340-341, 120 L. Ed.2d at 280-281, 112 S. Ct. 2514
.
(footnote: 1) 
    
 Based on the plain language of section 116-3 and on the interpretation of “actual innocence” in 
Gholston
 and 
Dunn
, we believe that the legislature intended to provide a process of total vindication
.  
A claim of “actual innocence” under section 116-3 does not involve an analysis of whether a defendant was proved guilty beyond a reasonable doubt at the original trial.  
Cf. 
People v. Washington
, 171 Ill.2d 475, 479, 665 N.E.2d 1330, 1332 (1996)(free standing claim of innocence did not involve an analysis of “whether the evidence at trial was insufficient to convict Washington beyond a reasonable doubt.”)  Rather, in using the term “actual innocence,” the legislature intended to limit the scope of section 116-3, allowing for scientific testing only where it has the potential to exonerate a defendant.
(footnote: 2) 
    

1. 
BLOOD STAINED PANTS

Here, defendant first sought to have DNA testing performed on the blood stained pants.  However, the potential results of DNA testing on the pants do not rise to the level of exculpation contemplated by section 116-3.  That is, even if the trial court allowed DNA testing of the pants, and the testing produced a negative match, defendant would not be exonerated.  Instead, a negative match could suggest that defendant did not wear these particular pants at the time of the murders.  Alternatively, if he did wear these pants, he may have committed his crimes without getting the victim’s blood on them, or he was able to clean the blood off before the police recovered them.  Although DNA testing carries the possibility of weakening the State’s original case against defendant, it does not have the potential to prove him innocent.  Accordingly, the trial court did not err in denying defendant’s motion.       

2. 
FINGERNAIL SCRAPINGS

Defendant alleges that DNA testing of the victims’ fingernail scrapings would show that any DNA recovered from under the victims’ fingernails could not have come from him
.  However, 
the trial court did not err in denying defendant’s motion.  

Under section 116-3(b)(2), a defendant has the burden of showing a proper chain of custody.  Here, defendant has failed to show that any evidence from fingernail scrapings exists.       

Although defendant claims that the evidence is in State custody, he failed to offer proof to the trial court.  At the hearing on the motion, defendant argued 
that, if necessary, he could use subpoena powers to acquire the requisite evidence to show a proper chain of custody.  Defendant could also have sought a stipulation by the State that the requirements of section 116-3 were met; he could have sought affidavits attesting to the relevant proofs necessary under section 116-3.  Defendant did none of these.  He has failed to meet his burden.

Alternatively, if defendant had established that the evidence existed and a proper chain of custody had been maintained, fingernail scrapings in this case would not be materially relevant to his assertion of actual innocence.  If DNA testing of the victims’ fingernail scrapings were conducted, and the results produce a negative match, defendant would not be exonerated.  The victims could potentially have DNA under their fingernails from a number of persons, none of which may belong to their killer.  There is no evidence that either of the victims’ fingernails ever came into contact with the perpetrator.  Therefore, DNA testing in these circumstances is inappropriate; it does not have the potential to prove defendant innocent.  The trial court properly denied defendant’s motion.

III. 
CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HOLDRIDGE, P.J., dissenting; HOMER, J., concurring.

PRESIDING JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent. I would hold that the defendant has met the statutory burden of establishing that he is entitled to DNA testing of both the blood stain pants and the fingernail scrapings and that the trial court erred in denying his motion for DNA testing.

It is axiomatic that statutes passed by our legislature are to be given their plain and ordinary meaning and when the intent of the legislature can be ascertained from the statutory language, it must be given effect without resorting to other aids of construction.  
People v. Bryant
, 128 Ill. 2d 448 (1989).  In other words, when it comes to trying to figure out the intent of the legislature, we must assume that it means what is says and says what it means.  In this matter, only by ignoring the plain language of the statute can my colleagues on the majority affirm the trial court.  I must therefore, respectfully dissent.

Section 116-3 of the Code states that "the trial court 
shall
 allow the testing * * * upon a determination that * * * the result of the testing has the scientific 
potential
 to produce new, noncumulative evidence 
materially
 
relevant
 to the defendant's assertion of actual innocence."  The plain ordinary meaning of this provision is that the trail court must order testing were there is a "potential" that "materially relevant" may result from the testing.  The plain and unambiguous language of the statute clearly bespeaks no legislative intent to limit the use of scientific testing only to situations where the testing will result in "total vindication."  Nor is there any indication from the language of the statute that the legislature intended scientific testing only where it had the potential to exonerate the defendant.  If the legislature had intended this statute to only be available where the scientific evidence would lead to "total vindication," it could have easily said so.   As such, it chose to allow testing in any case where the results were "materially relevant." We should honor their clearly stated intention.    

Reviewing the record in this matter, it is clear that the defendant has met his burden in petitioning for DNA testing.  There is no question that he has established a 
prima
 
facie
 case for chain of custody regarding the blood-stained pants.  In addition, those pants stained with blood of the same blood type as one of the victims were the key piece of physical evidence against him.  If it could now be shown through DNA testing that the blood on the pants was not the victim's, those results would be "materially relevant" to the defendant's claim of "actual innocence" 
i
.
e
., a claim of innocence that is free-standing rather that one based upon a claim of trial error.  See, 
People v. Washington
, 171 Ill. 2d 475, 479 (1996).     

For the foregoing reasons, I would reverse the trial court and I dissent on that basis.

FOOTNOTES
1: The court went on to distinguish “actual innocence” as applied to capital cases in which defendants challenge not the finding of guilt, but instead the finding of aggravating factors supporting eligibility for the death penalty.  
Sawyer
, 505 U.S. at 341, 120 L. Ed.2d at 281, 112 S. Ct. 2514.
  This situation is neither present nor applicable here. 
  

2: 
The legislative history of section 116-3 unequivocally supports this result.  See 90
th
 Ill. Gen. Assem., House Proceedings, April 15, 1997, at 1-20; 90
th
 Gen. Assem., Senate Proceedings, May 9, 1997, at 106-107.