FIRST DIVISION

 JUNE 22, 1998 

 

No. 1-95-3749

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

KENNETH GHOLSTON,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. PC 4822

Honorable

Colleen McSweeney Moore,

Judge Presiding.

OPINION UPON DENIAL OF REHEARING

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant Kenneth Gholston filed this appeal of the trial court's dismissal of his petition to compel genetic marker (DNA) testing and his supplemental postconviction petition.  Defendant challenges: (1) the trial court's refusal to order DNA testing of a sexual assault victim's Vitullo kit based on his claim of actual innocence, and (2) the trial court's refusal to correct defendant's mittimus.

Following a jury trial, defendant was found guilty of various sexual offenses, robbery, aggravated battery and conspiracy to commit robbery stemming from the sexual assault of a 15-year-old girl and an attack on her two male companions in 1981.  Eight other defendants were prosecuted and convicted for their involvement in these offenses; five of them were also convicted of the sexual crimes along with defendant.  Defendant's convictions were affirmed on direct appeal, as were the convictions of four codefendants.  
People v. Gholston
, 124 Ill. App. 3d 873, 464 N.E.2d 1179 (1984).

I.  FACTS

The facts of this case are specifically detailed in the court's opinion affirming defendant's convictions on direct appeal; therefore, we will only discuss facts relevant to the postconviction petitions.  
Gholston
, 124 Ill. App. 3d at 877-82.

At trial, the 15-year-old victim, identified as D.T., testified that at least six males sexually assaulted her on an "el" platform on December 27, 1980, at about 11:40 p.m.  Defendant was identified as the first to engage in forcible vaginal intercourse with the victim, and he also attempted forced anal intercourse on the victim.  Next, Darrell King, Dennis King, Anthony Gholston and Danny Gholston sexually assaulted the victim.  These offenders engaged in both forcible oral and vaginal intercourse with the victim.  David Love, the last offender to sexually assault the victim, pushed her off the el platform and forcibly engaged in vaginal intercourse with the victim in the snow near the el tracks.  The victim's two male companions were beaten and robbed.

Following the sexual assault, the victim identified defendant as one of the offenders who sexually assaulted her.  She also made an in-court identification of defendant.  Furthermore, one of the victim's male companions identified defendant at a lineup but was unable to identify defendant in court.  The other male companion identified defendant in court.  In addition, during an interview with an assistant State's Attorney, defendant admitted he was involved in the robbery and battery of the two males on the el platform but denied committing any offenses against the female victim.

Defendant was one of nine defendants prosecuted for the sexual offenses and aggravated battery against the female victim, and for robbery, aggravated battery and conspiracy to commit robbery against the two male victims.  Six defendants, including defendant Kenneth Gholston, were alleged to have been principals in the sexual assault and all six were convicted of the sexual offenses and aggravated battery against the female victim.  These six defendants were also convicted of the charges against the two male victims.  The remaining three defendants were convicted only of the crimes against the male victims.   

The jury found defendant Kenneth Gholston guilty of rape, deviate sexual assault, indecent liberties with a child, two counts of robbery, three counts of aggravated battery and one count of conspiracy to commit robbery.  The trial court sentenced defendant to a total term of 258 years' imprisonment.  On direct appeal, this court held that under section 5-8-2 of the Unified Code of Corrections, defendant could not receive a sentence greater than the sum of the two most serious felonies involved.  Ill. Rev. Stat. 1979, ch. 38, par. 1005-8-2(a)(2).  Thus under the existing law, the court found that the maximum term for rape or deviate sexual assault was 60 years.  Therefore, the court modified defendant's sentence to provide for an aggregate term of 120 years.  
Gholston
, 124 Ill. App. 3d at 897.  Defendant's mittimus was never amended pursuant to this court's modification of defendant's sentence on direct appeal.  In addition, defendant's mittimus incorrectly reflects convictions and sentences for two counts of indecent liberties with a child and convictions and sentences for five counts of aggravated battery.

On March 3, 1993, defendant filed a petition to compel genetic marker testing.  In addition, in September 1995, defendant filed a supplemental postconviction petition.  In both petitions, defendant requested that vaginal swabs and slides contained in the victim's Vitullo kit be subjected to DNA genetic marker testing.  On September 6, 1995, the trial court denied and dismissed defendant's original and supplemental petitions for postconviction relief.

II.  ANALYSIS

In order to obtain relief under the provisions of the Post-Conviction Hearing Act, a defendant must establish that a substantial deprivation of his or her constitutional rights occurred in the trial or sentencing hearing.  725 ILCS 5/122-1 
et
 
seq
. (West 1996).  A defendant is not entitled to an evidentiary hearing on a postconviction petition as a matter of right; rather, an evidentiary hearing is required only when the allegations of the petitioner, supported by the record or accompanying affidavits, make a substantial showing of a violation of a constitutional right.  
People v. Olinger
, 176 Ill. 2d 326, 680 N.E.2d 321 (1997).  Upon review of a dismissal of a postconviction petition without an evidentiary hearing, the trial court's decision will not be disturbed absent an abuse of discretion.  
People v. Madej
, 177 Ill. 2d 116, 685 N.E.2d 908 (1997).

Defendant here characterizes his claim as a free-standing claim of innocence based on newly discovered evidence.  He contends that the performance of genetic testing can establish his actual innocence of the offense or, in the alternative, demonstrate he was only an accomplice to the other offenders and did not actually sexually assault the victim.  We disagree and hold that under the circumstances of this particular case, the performance of genetic testing would not provide evidence that is material to defendant's assertion of actual innocence and could not provide evidence that would probably change the result on retrial. 

The Illinois Supreme Court has recently noted the viability of a free-standing postconviction claim of innocence based on newly discovered evidence.  
People v. Washington
, 171 Ill. 2d 475, 665 N.E.2d 1330 (1996). In 
Washington
, the defendant presented newly discovered evidence that the trial court determined would have had significant impact on the jury, and a new trial was granted.  The supreme court affirmed the trial court's decision and held that while the defendant's effort to state a federal constitutional due process claim under the Post-Conviction Hearing Act failed, his claim was cognizable under the Illinois Constitution's due process protection. 

"We therefore hold as a matter of Illinois constitutional 

jurisprudence that a claim of newly discovered evidence 

showing a defendant to be actually innocent of the crime for which he was convicted is cognizable as a matter of due process."  
Washington
, 171 Ill. 2d at 489.   

The 
Washington
 court noted that the supporting evidence of actual innocence must be "new, material, noncumulative and, most importantly, '"of such conclusive character"' as '"would probably change the result on retrial."'"  
Washington
, 171 Ill. 2d at 489, quoting 
People v. Silagy
, 116 Ill. 2d 357, 368 (1987), quoting 
People v. Molstad
, 101 Ill. 2d 128, 134 (1984).

  To obtain a new trial based on newly discovered evidence, a defendant must establish the following: (1) the evidence was not available at the defendant's trial and could not have been discovered sooner through the exercise of due diligence; and (2) the evidence must be of such conclusive character that it would probably change the outcome of the trial.  
People v. Burrows
, 172 Ill. 2d 169, 180, 665 N.E.2d 1319 (1996); 
People v. Edwards
, 291 Ill. App. 3d 476, 484, 684 N.E.2d 802 (1997). 

An allegation of newly discovered evidence of innocence is not intended to question the strength of the State's case.  An allegation of newly discovered evidence of innocence seeks to establish the defendant's actual innocence of the crimes for which he has been tried and convicted.  
Washington
, 171 Ill. 2d at 495 (McMorrow, J., specially concurring).  In general, genetic testing of the type requested by defendant has the potential to offer material evidence and, in some cases, evidence that could exonerate a defendant if no match is found.  However, this is not true under the circumstances of the present case.  Even if defendant's DNA sample were found not to match the DNA taken from the victim, this result would not be material to his claim of actual innocence.  

At trial, the State presented substantial evidence as to defendant's participation in the sexual assault of the female victim, in addition to his participation in the robbery of her male companions.  This evidence included in-court and lineup identifications by the female victim, a lineup identification by one of the two male companions of the victim and an in-court identification by the second male companion.  The State also presented evidence from an assistant State's Attorney of defendant's inculpatory statement in which he admitted to robbing the males but denied any offenses against the female victim.  Additionally, a police officer testified he saw defendant on the el platform following the attack.

Although no direct physical evidence connecting defendant to the crimes was introduced at trial, the State did present physical evidence that directly linked his companions to the attack. Though defendant was not arrested until 10 days after the incident, six of his codefendants were arrested immediately following the crime and two others were arrested the following day.  The State introduced testimony that vaginal swabs from the victim's Vitullo kit tested positive for semen, and clothing removed from the first six offenders arrested was sent to the Chicago crime lab for testing.  A microanalyst testified that the clothing of three of these men tested positive for sperm, and one tested positive for the presence of mucous.  The victim did not testify that defendant ejaculated, and as he was arrested several days after the commission of the crime, there was no evidence available on his clothing to directly link him to the crime.  At a minimum, the scientific evidence offered against the codefendants circumstantially corroborated the State's case against defendant.  

We note that defendant did not contest the sufficiency of evidence establishing his guilt beyond a reasonable doubt in his direct appeal.  See 
Gholston
, 124 Ill. App. 3d at 873.  Despite the lack of direct physical evidence linking defendant to the sexual assault, the incriminating evidence introduced against defendant at trial was overwhelming.  Accordingly, based on the totality of the circumstances, we must reject defendant's argument that the newly available DNA results would change the result of the trial.

To begin with, there was no testimony from the victim that defendant Gholston ejaculated during the commission of the sexual assault; therefore, the testing of the DNA from the victim's Vitullo kit could not produce conclusive evidence to demonstrate defendant's actual innocence.  Ejaculation is not an element of the sexual assault offenses of which defendant was convicted.  See Ill. Rev. Stat. 1979, ch. 38, pars. 11-1, 11-3, 11-4(a)(1).  Consequently, the absence of defendant's DNA from the Vitullo kit could establish that defendant did not ejaculate during the sexual assault, but could not conclusively establish that defendant did not sexually assault the victim.   

The present case can be factually distinguished from 
Dabbs v. Vergari
, 149 Misc. 2d 844, 570 N.Y.S.2d 765 (1990), cited by defendant.  In 
Dabbs
, the New York court ordered genetic testing of DNA samples that were taken from a rape victim after the attack and from the defendant convicted in the assault.  As in the present case, DNA testing was unavailable at the time of the original trial, though the victim had identified the defendant as her attacker.  The victim also testified that the attacker, who acted alone, had ejaculated and that she had not had sexual relations with anyone else for at least 24 hours prior to the assault.  Therefore, the court noted that the semen samples collected from the victim following the assault could only belong to the attacker.  
Dabbs
, 149 Misc.2d at 848, 570 N.Y.S. 2d at 768.  The court stated that if DNA testing could exclude that semen as belonging to the defendant, it would strongly impeach the credibility of the victim's identification of defendant. The court stated that where evidence has been preserved which has high exculpatory potential, that evidence should be discoverable after conviction.  
Dabbs
, 149 Misc.2d at 848, 570 N.Y.S. 2d at 768.

In addition, the proposed test offers little or no exculpatory potential.  Here, there were multiple defendants who participated in the sexual assault, one or more of whom may have ejaculated.  This is not a case where there is only one attacker as in 
Dabbs
, and there is no evidence defendant himself ejaculated.  Here, we cannot say that the semen samples collected from the victim following the assault must match the defendant in order to prove his guilt.  The absence of DNA in the victim's Vitullo kit that matches the DNA of defendant cannot provide evidence of innocence sufficient to override the witness identifications and self-incriminating statements defendant made about his participation in the crime.

Hypothetically, even if the DNA test result could demonstrate that defendant was not a principal participant in the sexual assault, under the facts of this case such a result would be insufficient to establish actual innocence.  At trial, the State presented as evidence defendant's confession in which he admitted his presence at the el stop at the time of the sexual assault and admitted to the robbery and aggravated battery of the two male victims.  Thus, by his own admission, defendant is legally responsible for the sexual assault of the female victim by his codefendants under a theory of accountability even if it could be determined he did not actually rape the victim.   

Like the court in 
Washington
, we recognize that due process requires that no person convicted of a crime should be deprived of life or liberty given compelling evidence of actual innocence. 
Washington
, 171 Ill. 2d at 489.  In fact, legislation was recently enacted that codifies the use of forensic testing in cases where the testing "has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence."  725 ILCS 5/116-3(c)(1) (West Supp. 1997).  We note that in some cases, DNA testing may yield conclusive information as to the actual innocence of a wrongly accused criminal defendant.  However, in this case, a negative DNA match would not exculpate defendant Gholston due to the multiple defendants involved, the lack of evidence regarding ejaculation by the defendant Gholston and defendant's own admission of guilt under a theory of accountability.  

Using the standard articulated in 
Washington
, we hold that any evidence that could be obtained via DNA testing would not be material to this particular defendant's actual innocence and would not be of such conclusive character as to probably change the result on retrial.  Defendant failed to present allegations supported by the record or accompanying affidavits which constitute a substantial showing of a violation of a constitutional right sufficient to merit a hearing under the Post-Conviction Hearing Act.  Accordingly, the trial court's denial of defendant's postconviction petition was not an abuse of discretion and is affirmed.

Defendant also claims that his mittimus is incorrect and should be amended.  The State does not object to this correction and we order that defendant's mittimus be amended pursuant to this court's opinion on direct appeal.

Affirmed.

BUCKLEY, P.J., and O'BRIEN, J., concur.