801 N.E.2d 1187 (2003)
345 Ill. App.3d 129
280 Ill.Dec. 242
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Joseph PRICE, Defendant-Appellant.
No. 2-01-1291.
Appellate Court of Illinois, Second District.
December 18, 2003.
*1189 G. Joseph Weller, Deputy Defender, and Paul Alexander Rogers (Court-appointed), Office of the State Appellate Defender, Elgin, for Joseph Price.
Martin P. Moltz, Deputy Director, Joan M. Kripke, State's Attorneys Appellate Prosecutor, Elgin, for the People.
Justice BOWMAN delivered the opinion of the court:
Defendant, Joseph Price, appeals from the order of the circuit court of Lee County denying his motion pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3 (West 2000)) for forensic testing not available at trial. We reverse and remand.
Defendant was charged with two counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 1994)) against David Doll and three counts of aggravated criminal sexual assault (720 ILCS 5/12-13(a)(1), 12-14(a)(2) (West 1994)) against John Kien. In 1996, a jury convicted defendant of the three counts of aggravated criminal sexual assault against John Kien while defendant and Kien were inmates at the Dixon Correctional Center. The jury found him not guilty of the two counts of criminal sexual assault against David Doll. The trial court sentenced defendant to 35 years' imprisonment on each count, to be served consecutively. We affirmed the judgment. People v. Price, No. 2-97-1289, 307 Ill.App.3d 1085, 260 Ill.Dec. 294, 760 N.E.2d 1067 (1999) (unpublished order under Supreme Court Rule 23).
The evidence presented at trial established that on October 31, 1994, defendant beat and sodomized Kien. The State's first witness was codefendant Richard Lonkert. Lonkert testified that he and defendant entered Kien's cell and beat him severely for 1½ to 2 hours. Lonkert further testified that after beating Kien, defendant inserted his penis into Kien's rectum and had anal sex with him for 5 to 10 minutes. Defendant then ordered Kien to perform oral sex on Lonkert and him. Kien complied, but shortly thereafter Lonkert stopped him. Lonkert then began sexually assaulting Kien, but then stopped, declaring it "just wasn't for me." Describing his actions, Lonkert said that he inserted his penis in Kien's anus but did not "actually penetrate John Kien anally." Defendant then continued to have anal sex with Kien for another 5 to 10 minutes. Lonkert stated that, after defendant finished sexually assaulting Kien, he forced Kien to wash off defendant's penis. On cross-examination, Lonkert admitted that earlier in the day he drank a large amount of homemade wine and smoked marijuana. *1190 For his part in the attack on Kien Lonkert pleaded guilty and received a four year sentence.
Next, David Doll, Kien's cell mate, testified that earlier in the night defendant sexually assaulted him. Doll said that defendant inserted his penis in his anus three times and ejaculated in his rectum. Doll stated that, after defendant sexually assaulted him, he saw Lonkert and defendant enter Kien's cell. According to Doll, he heard Lonkert and defendant beat Kien, remaining in the cell with him from approximately 8:15 p.m. to 10:30 p.m. Upon entering the cell, Doll saw Kien sitting on the bed with the sheets soaked in blood. Defendant's counsel challenged Doll with a letter that Doll wrote two weeks after the attack wherein he retracted his accusation that defendant sexually assaulted him. However, Doll maintained that two other inmates forced him to make the retraction.
Another inmate, David Williamson, testified that he was in the cell next to Kien's cell. Doll asked Williamson to help Kien. Williamson said that he looked inside Kien's cell and saw Kien lying face down on the bed with defendant on top of him performing anal sex. He also saw Lonkert standing in the cell while the sexual assault occurred.
When Kien testified, he substantially corroborated the testimony of Lonkert, Doll, and Williamson. Kien said that defendant forced him to perform oral sex and to engage in anal sex with Lonkert and defendant. He stated that, as a result of the attack, he suffered multiple bruises and contusions, three broken ribs, and a punctured lung. Kien also identified a pair of weight-lifting gloves that defendant wore during the attack. The gloves had been discovered as part of a search of defendant's cell following the attack.
Correctional captain Stemes testified that, during an interview with defendant the next day, defendant denied sexually assaulting Kien. He told Sternes that he had been knocked unconscious by an unidentified assailant the prior evening by a blow to the back of the head and thought that he too had been sexually assaulted. Sternes noticed a small abrasion in the middle of defendant's forehead, but failed to see a bump or mark on the back of his head. A prison nurse then testified that defendant told him that he had been in a fight, but that defendant said nothing about being sexually assaulted.
In the early morning hours of November 1, 1994, Kien and Doll were taken to see nurse Barbara Fichtenmuller. Fichtenmuller took rectal swabs from both of them. At trial, the parties stipulated to the admission of an expert report that identified the material recovered on the rectal swabs during the medical examinations. The State and defendant stipulated that "Exhibit 1" was a rectal swab containing seminal fluid recovered from Doll's anus and "Exhibit 2" was a rectal swab containing one spermatozoa recovered from Kien's anus. The State submitted the report and exhibits for the purpose of showing that both Doll and Kien had been penetrated during their attacks. However, no one attempted to match the seminal fluid or spermatozoa to a specific person. Thus, the State did not argue that the seminal fluid or spermatozoa came from defendant. Alternatively, defendant did not scientifically establish that he was not the source.
On November 9, 1999, defendant filed his motion pursuant to section 116-3 of the Code (725 ILCS 5/116-3 (West 2000)) for forensic testing not available at trial. He seeks to have a deoxyribonucleic acid (DNA) test performed on the seminal fluid recovered from Doll and the spermatozoa *1191 sample recovered from Kien. The trial court denied the motion as untimely filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(c) (West 2000)).
Section 116-3 states as follows:
"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.
(b) The defendant must present a prima facie case that: (1) identity was the issue in the trial which resulted in his or her conviction; and (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.
(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:
(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence;
(2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116-3 (West 2000).
The appropriate standard to review a trial court's ruling on a motion brought under section 116-3 is de novo. People v. Hockenberry, 316 Ill.App.3d 752, 755, 250 Ill.Dec. 111, 737 N.E.2d 1088 (2000). A de novo review is appropriate because the trial court's decision on such a motion is necessarily based upon a review of the pleadings and trial record and is not based upon an assessment of the credibility of witnesses. Hockenberry, 316 Ill.App.3d at 755, 250 Ill.Dec. Ill, 737 N.E.2d 1088. Thus, the trial court is not in a better position than the reviewing court to judge the merits of the section 116-3 motion. Hockenberry, 316 Ill.App.3d at 755-56, 250 Ill.Dec. Ill, 737 N.E.2d 1088.
As an initial matter, we find that the trial court incorrectly decided that defendant's motion was untimely pursuant to the statute of limitations set forth under the Act. Section 116-3 does not contain a specific time limit within which a defendant must request relief. See 725 ILCS 5/116-3 (West 2000). Both People v. Rokita, 316 Ill.App.3d 292, 303, 249 Ill.Dec. 363, 736 N.E.2d 205 (2000), and People v. Barksdale, 327 Ill.App.3d 422, 430, 261 Ill. Dec. 100, 762 N.E.2d 669 (2001), have addressed this issue and decided that the Act's time limitations for filing a postconviction petition do not apply to a motion filed under section 116-3. Moreover, the legislative history of section 116-3 indicates that the legislature did not intend to impose the Act's time limitations upon a section 116-3 motion. See Rokita, 316 Ill.App.3d at 303, 249 Ill.Dec. 363, 736 N.E.2d 205. Accordingly, we find that defendant's motion was not time-barred.
Turning now to the merits, a defendant must meet the two criteria of section 116-3(b) by presenting a prima facie case that identity was at issue at his trial and that the evidence to be tested has been under a secure chain of custody. 725 ILCS 5/116-3(b) *1192 (West 2000). Testing is thereafter permitted if, among other requirements, "the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence." 725 ILCS 5/116-3(c)(1) (West 2000).
Because section 116-3 is relatively new (enacted in 1998), courts have struggled with the application of the term "materially relevant." In this case, the evidence against defendant is compelling. There are four occurrence witnesses, albeit four convicted criminals, and there is other circumstantial evidence, including defendant's alleged story that he too was attacked. Also, the testimony that multiple persons, defendant and Lonkert, penetrated Kien raises concerns because it is often difficult to analyze a mixed DNA sample (a sample containing genetic material from more than one person). See C. Strom, Genetic Justice: A Lawyer's Guide to the Science of DNA Testing, 87 Ill. B.J. 18, 20 (1999). Thus, we will first discuss whether the testing could produce "materially relevant" evidence.
In People v. Savory, 197 Ill.2d 203, 213, 258 Ill.Dec. 530, 756 N.E.2d 804 (2001), our supreme court discussed the meaning of "materially relevant" evidence. The supreme court rejected the appellate court's conclusion that evidence must exonerate a defendant in order for it to be materially relevant. Savory, 197 Ill.2d at 214, 258 Ill.Dec. 530, 756 N.E.2d 804. Relevant evidence is evidence that tends to prove or disprove a matter in issue. Savory, 197 Ill.2d at 213, 258 Ill.Dec. 530, 756 N.E.2d 804. The term "materially" modifies the term "relevant" and means "to a significant extent or degree." Savory, 197 Ill.2d at 213, 258 Ill.Dec. 530, 756 N.E.2d 804. Thus, the supreme court concluded that "materially relevant evidence" is evidence that tends to "significantly advance" a defendant's claim of actual innocence. Savory, 197 Ill.2d at 213, 258 Ill.Dec. 530, 756 N.E.2d 804. Whether the evidence at issue is materially relevant to a defendant's claim of actual innocence requires a consideration of the evidence at trial, as well as an assessment of the evidence the defendant is requesting to test. Savory, 197 Ill.2d at 214, 258 Ill.Dec. 530, 756 N.E.2d 804.
It is further worth noting that Delaware has modeled its postconviction DNA testing statute after the Illinois statute. Del. Code Ann. tit. 11, § 4504(a) (2002). In a recently released opinion, the Supreme Court of Delaware adopted Savory's definition of "materially relevant." Anderson v. State, 831 A.2d 858, 867 (Del. Supr. 2003). There, after considering the application of Savory, the court stated that if the State presented a strong case, and a favorable DNA test would discredit only an ancillary fact, the testing should be denied. Anderson, 831 A.2d at 867. At the other end of the spectrum, where DNA evidence could exonerate the defendant, regardless of the strength of the State's case, DNA testing should be granted. Anderson, 831 A.2d at 867. Finally, Anderson points out that the DNA statute demands only that the proposed DNA testing have the "scientific potential" to return favorable evidence. See 725 ILCS 5/116-3(c) (West 2000). Thus, while a court must consider the exculpatory potential of a favorable result (Savory, 197 Ill.2d at 214, 258 Ill.Dec. 530, 756 N.E.2d 804), it is irrelevant whether the test will likely be favorable or not (Anderson, 831 A.2d at 867). "If testing is otherwise warranted, it should be authorized, no matter how slight the chance that it will, in fact, yield a favorable result." Anderson, 831 A.2d at 867.
Courts have found it important to note that a "section 116-3 motion does not *1193 seek a new trial, however, but merely forensic testing." Rokita, 316 Ill.App.3d at 301, 249 Ill.Dec. 363, 736 N.E.2d 205. Thus, if a section 116-3 motion is granted, when the defendant makes a subsequent claim of actual innocence, the "supporting evidence must be new, material, noncumulative, and so conclusive that it would probably change the result on retrial." People v. Johnson, 205 Ill.2d 381, 392, 275 Ill.Dec. 820, 793 N.E.2d 591 (2002); see also People v. Shum, 207 Ill.2d 47, 67, 278 Ill.Dec. 14, 797 N.E.2d 609 (2003) (stating that evidence of actual innocence has to be of such conclusive character that it would probably change the result on retrial). This is the standard to be used when considering whether to grant postconviction relief based on a "nonmatch" between a defendant and the samples that were secured in relation to the defendant's trial. See People v. Henderson, 343 Ill.App.3d 1108, 1120, 278 Ill.Dec. 817, 799 N.E.2d 682 (2003) (modified on denial of rehearing). In Shum, the defendant brought a section 116-3 motion along with a claim of actual innocence based on the speculation that a DNA test could show he was not a rapist. Shum, 207 Ill.2d at 67, 278 Ill.Dec. 14, 797 N.E.2d 609. The court allowed the test. Shum, 207 Ill.2d at 67, 278 Ill.Dec. 14, 797 N.E.2d 609. However, the court found that it was premature to evaluate the defendant's claim of actual innocence until the results of the test were known. Shum, 207 Ill.2d at 67, 278 Ill.Dec. 14, 797 N.E.2d 609. Thus, while the supreme court in Savory observed that a court must assess the evidence the defendant is requesting to test (Savory, 197 Ill.2d at 214, 258 Ill.Dec. 530, 756 N.E.2d 804), we must be cautious not to "collapse" our consideration of defendant's section 116-3 motion and defendant's claim of actual innocence into a single analysis. Henderson, 343 Ill.App.3d at 1120-21, 278 Ill.Dec. 817, 799 N.E.2d 682.
Because the cases that have considered whether evidence is materially relevant to warrant testing all turn on the facts of each individual case, we will briefly examine them, as they provide concrete examples of where the boundary lines have been drawn. To date, Savory is the most significant Illinois case wherein the defendant's section 116-3 motion was denied because the result of testing would not have the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's claim of actual innocence. Savory, 197 Ill.2d at 215, 258 Ill.Dec. 530, 756 N.E.2d 804. In Savory, a 14-year-old defendant was convicted in the stabbing deaths of a 19-year-old victim and her younger brother. Savory, 197 Ill.2d at 205, 258 Ill.Dec. 530, 756 N.E .2d 804. While being questioned by police, the defendant confessed to the crimes. After an initial trial in the case, the appellate court concluded that the confession was inadmissible and reversed the conviction. Savory, 197 Ill.2d at 205-06, 258 Ill.Dec. 530, 756 N.E.2d 804. At a second trial, the State introduced the defendant's admissions to several friends that he had carried out the crimes. Savory, 197 Ill.2d at 206, 258 Ill.Dec. 530, 756 N.E.2d 804. The State also offered evidence of statements that the defendant made to the police prior to making the inadmissible confession. Savory, 197 Ill.2d at 207, 258 Ill.Dec. 530, 756 N.E.2d 804. The State then introduced physical evidence connecting the defendant with the crimes, including evidence that hairs consistent with the defendant's were found in a bathroom sink and tub and that a knife from the defendant's home had blood on it. Savory, 197 Ill.2d at 207, 258 Ill.Dec. 530, 756 N.E.2d 804. Finally, the State introduced evidence that a bloodstain found on a pair of trousers recovered from the defendant's home was of the same blood type as that *1194 of one of the victims. Savory, 197 Ill.2d at 207, 258 Ill.Dec. 530, 756 N.E.2d 804,
After his conviction, the defendant filed a section 116-3 motion to have a DNA test performed on the bloodstained trousers. Savory, 197 Ill.2d at 208-09, 258 Ill.Dec. 530, 756 N.E.2d 804. The supreme court held that the evidence that the defendant sought to test was not "materially relevant" to his claim of actual innocence. Savory, 197 Ill.2d at 214, 258 Ill.Dec. 530, 756 N.E.2d 804. The court noted that the testimony regarding the possible source of the bloodstain on the trousers was only a minor part of the State's case, which mainly relied upon the defendant's inculpatory comments to the police and friends. Savory, 197 Ill.2d at 214-15, 258 Ill.Dec. 530, 756 N.E.2d 804. Essentially, the bloodstained trousers were a collateral issue and were not central to the State's case. Savory, 197 Ill.2d at 215, 258 Ill.Dec. 530, 756 N.E.2d 804. The supreme court concluded that, "[u]nder these circumstances, a test result favorable to defendant would not significantly advance his claim of actual innocence, but would only exclude one relatively minor item from the evidence of guilt marshaled against him by the State." Savory, 197 Ill.2d at 215, 258 Ill.Dec. 530, 756 N.E.2d 804.
In a case that followed the holding in Savory, the Appellate Court, Fourth District, refused a defendant's postconviction request for DNA testing after he had been convicted of murdering and sexually assaulting an elderly woman. People v. Travis, 329 Ill.App.3d 280, 281, 264 Ill.Dec. 785, 771 N.E.2d 489 (2002). The defendant was seeking to test blood found on a mallet and flashlight recovered from the crime scene and semen found on the victim. Travis, 329 Ill.App.3d at 283, 264 Ill.Dec. 785, 771 N.E.2d 489. Testimony presented at trial indicated that the defendant confessed to the crimes. Travis, 329 Ill.App.3d at 281, 264 Ill.Dec. 785, 771 N.E.2d 489. He directed the police to the scene of the crimes and described the manner in which he and his accomplice gained entry into the home. Travis, 329 Ill.App.3d at 281, 264 Ill.Dec. 785, 771 N.E.2d 489. He also described shoving a flashlight into the victim's vagina. Travis, 329 Ill.App.3d at 281, 264 Ill.Dec. 785, 771 N.E.2d 489. However, the evidence at trial showed that semen, hair, and fingerprints found at the scene did not come from the defendant. Travis, 329 Ill. App.3d at 281-82, 264 Ill.Dec. 785, 771 N.E.2d 489. The jury was told that the semen did not come from the defendant or the accomplice. Travis, 329 Ill.App.3d at 285, 264 Ill.Dec. 785, 771 N.E.2d 489. In the end, the court determined that the case was factually analogous to Savory and, thus, denied the defendant's section 116-3 motion. Travis, 329 Ill.App.3d at 284, 264 Ill.Dec. 785, 771 N.E.2d 489.
In People v. Urioste, 316 Ill.App.3d 307, 249 Ill.Dec. 512, 736 N.E.2d 706 (2000), the defendant was convicted of stabbing a young woman to death. The evidence against the defendant included an identification by the victim's mother, who walked into the room during the attack. Urioste, 316 Ill.App.3d at 318, 249 Ill.Dec. 512, 736 N.E.2d 706. She saw the defendant on top of her daughter and immediately recognized that the defendant was a young man who lived next door. Urioste, 316 Ill. App.3d at 318, 249 Ill.Dec. 512, 736 N.E.2d 706. Immediately after the attack, the police found the defendant in his bed, his body and underwear covered with blood. Urioste, 316 Ill.App.3d at 318, 249 Ill.Dec. 512, 736 N.E.2d 706. The blood matched the type possessed by the victim. Urioste, 316 Ill.App.3d at 318, 249 Ill.Dec. 512, 736 N.E.2d 706. The defendant further made admissions to the police and the judge who arraigned him. Urioste, 316 Ill.App.3d at 318, 249 Ill.Dec. 512, 736 N.E.2d 706. The *1195 court rejected the defendant's request to test the blood on the knife and his underwear, concluding that, even with a favorable result, no court in the country would feel compelled to release the defendant based on his claim of actual innocence. Urioste, 316 Ill.App.3d at 318, 249 Ill.Dec. 512, 736 N.E.2d 706. Thus, Urioste is a good example of a case wherein the court determined that the evidence presented at trial was so overwhelming that granting a DNA test was pointless.
In People v. Gholston, 297 Ill.App.3d 415, 231 Ill.Dec. 821, 697 N.E.2d 375 (1998), a case that was decided in the same year that section 116-3 was enacted, the defendant and five others were convicted of battering and sexually assaulting a 15-year-old girl and also of battering and robbing her two male companions on a train platform. Gholston, 297 Ill.App.3d at 416, 231 Ill.Dec. 821, 697 N.E.2d 375. The female victim identified the defendant as one of the assailants who sexually assaulted her. Gholston, 297 Ill.App.3d at 417, 231 Ill.Dec. 821, 697 N.E.2d 375. One of the male victims also identified the defendant in a lineup but could not identify the defendant in court. Gholston, 297 Ill. App.3d at 417, 231 Ill.Dec. 821, 697 N.E.2d 375. The other male victim, however, did provide an in-court identification. Gholston, 297 Ill.App.3d at 417, 231 Ill.Dec. 821, 697 N.E.2d 375. Last, during an interview with the assistant State's Attorney, the defendant admitted that he took part in the beating and robbery of the two male companions but he denied sexually assaulting the girl. Gholston, 297 Ill.App.3d at 417, 231 Ill.Dec. 821, 697 N.E.2d 375.
The defendant filed a postconviction petition, requesting that vaginal swabs and slides contained in the female victim's Vitullo rape kit be subjected to DNA testing. Gholston, 297 Ill.App.3d at 418, 231 Ill. Dec. 821, 697 N.E.2d 375. The court did not apply the section 116-3 standard. Gholston, 297 Ill.App.3d at 418, 231 Ill. Dec. 821, 697 N.E.2d 375. Rather, the court held that a newly available DNA result favorable to the defendant would not change the result of the trial. Gholston, 297 Ill.App.3d at 418, 231 Ill.Dec. 821, 697 N.E.2d 375. After finding that the evidence against the defendant was overwhelming, the court concluded that the participation of multiple defendants in the sexual assault meant that the semen samples collected need not match the defendant in order to prove his guilt. Gholston, 297 Ill.App.3d at 420, 231 Ill.Dec. 821, 697 N.E.2d 375. Moreover, the court determined that the defendant's admission that he participated in the beating and robbery made him accountable for the sexual assault. Gholston, 297 Ill.App.3d at 421, 231 Ill.Dec. 821, 697 N.E.2d 375.
We will now examine the cases wherein a section 116-3 request was granted after the reviewing court determined that a favorable result would be materially relevant to the defendant's claim of actual innocence. In Johnson, another major supreme court case addressing this issue, an assailant murdered one victim and raped and attempted to murder a second victim. Johnson, 205 Ill.2d at 385, 275 Ill.Dec. 820, 793 N.E.2d 591. The supreme court permitted DNA testing to be performed on samples collected in a rape kit. Johnson, 205 Ill.2d at 409, 275 Ill.Dec. 820, 793 N.E.2d 591. However, the State presented a largely circumstantial case and a weak identification by the rape victim. Johnson, 205 Ill.2d at 396-97, 275 Ill.Dec. 820, 793 N.E.2d 591. The supreme court held that a favorable result on a DNA test would significantly advance the defendant's claim that he did not rape the second victim, which, in turn, would significantly advance his claim that he did not murder the first victim. Johnson, 205 *1196 Ill.2d at 396-97, 275 Ill.Dec. 820, 793 N.E.2d 591.
Since we issued our original ruling in this case, another relevant supreme court case on DNA testing has been decided. In Shum, the supreme court examined a case with circumstances "nearly identical to those of Johnson." Shum, 207 Ill.2d at 66, 278 Ill.Dec. 14, 797 N.E.2d 609. There, the defendant was convicted of raping two women at gunpoint and then shooting them. Shum, 207 Ill.2d at 50, 278 Ill.Dec. 14, 797 N.E.2d 609. Only one of the women survived. Shum, 207 Ill.2d at 53, 278 Ill.Dec. 14, 797 N.E.2d 609. In finding that a "nonmatch" result derived from a DNA test performed on a rape kit sample would significantly advance the defendant's claim of actual innocence, the court stated that "[t]he only direct evidence in this case is the identification of defendant by Theresa Conway for murder and rape in which there was a single assailant, and defendant has consistently denied involvement in the crimes." Shum, 207 Ill.2d at 66, 278 Ill.Dec. 14, 797 N.E.2d 609. Thus, once again, the court permitted DNA testing where there was limited direct evidence and one assailant, and where a favorable test result would significantly advance the defendant's claim of actual innocence. Shum, 207 Ill.2d at 67, 278 Ill.Dec. 14, 797 N.E.2d 609.
In People v. Hockenberry, 316 Ill.App.3d 752, 250 Ill.Dec. Ill, 737 N.E.2d 1088 (2000), we considered the defendant's section 116-3 request after he was convicted of sexually assaulting his ex-wife and invading her home. Hockenberry, 316 Ill. App.3d at 754, 250 Ill.Dec. Ill, 737 N.E.2d 1088. There, the defendant acknowledged that he entered the victim's home but denied sexually assaulting her. Hockenberry, 316 Ill.App.3d at 754, 250 Ill.Dec. Ill, 737 N.E.2d 1088. The victim testified at trial that the defendant entered the back door of her residence without consent and then beat and sexually assaulted her. Hockenberry, 316 Ill.App.3d at 754, 250 Ill.Dec. Ill, 737 N.E.2d 1088. When the police arrived at her home, they found that the door had been forced open and they encountered the defendant naked and asleep at the victim's kitchen table. Hockenberry, 316 Ill.App.3d at 756-57, 250 Ill. Dec. Ill, 737 N.E.2d 1088. Seminal stains were found on the victim's underwear and bedsheet. Hockenberry, 316 Ill.App.3d at 756-57, 250 Ill.Dec. Ill, 737 N.E.2d 1088. In addition, vaginal swabs taken from the victim contained semen. Hockenberry, 316 Ill.App.3d at 756-57, 250 Ill.Dec. Ill, 737 N.E.2d 1088. The State's forensic expert testified that the defendant could not be eliminated as the source of the semen. Hockenberry, 316 Ill.App.3d at 756-57, 250 Ill.Dec. Ill, 737 N.E.2d 1088.
On appeal from the denial of the defendant's DNA testing request, the State pointed out that the victim testified to having sexual intercourse with another person prior to the sexual assault. Hockenberry, 316 Ill.App.3d at 757-58, 250 Ill. Dec. Ill, 737 N.E.2d 1088. The State argued that the semen samples could have come from the other person and, therefore, DNA test results could not establish the defendant's actual innocence of the crime. Hockenberry, 316 Ill.App.3d at 757-58, 250 Ill.Dec. 111, 737 N.E.2d 1088. In the end, we agreed with the State that it was possible that the defendant may have committed the crime even if the DNA test revealed a nonmatch between the defendant and the semen sample. Hockenberry, 316 Ill.App.3d at 759, 250 Ill.Dec. 111, 737 N.E.2d 1088. Nonetheless, we ruled that such evidence would support his claim that he did not engage in a sexual act with the victim and, thus, it would be "materially relevant" to his claim of actual innocence. Hockenberry, 316 Ill.App.3d at 759, 250 Ill.Dec. 111, 737 N.E.2d 1088.
*1197 In Henderson, a recently released opinion, the Appellate Court, First District, granted the defendant's request for DNA testing on a pair of bloodstained pants and a sample derived from a rape kit. Henderson, 343 Ill.App.3d at 1121-22, 278 Ill.Dec. 817, 799 N.E.2d 682. There, the defendant and another assailant were convicted of dragging the victim into the defendant's car at knifepoint and repeatedly raping her. The court summarized the evidence as follows:
"(1) the victim was kidnaped by Sims [the second assailant] and placed into the defendant's car; (2) the victim was able to view both Sims and defendant for several hours; (3) the police caught Sims engaged in sexually assaulting the victim; (4) a second black male was seen fleeing the scene; (5) the defendant was seen a few blocks from the parking garage and interviewed by Officer DeVogelear within minutes of the police arresting Sims in the act of sexually assaulting the victim; (6) the police recovered defendant's driver's license in his car where the sexual assaults took place; (7) the defendant admitted shaving off his goatee the night of the attack; (8) a defense witness said that defendant and Sims were together the night of the attack and Sims was talking about robbing people; (9) defendant told the police that the bloodstains on his pants were the result of a cut he suffered several days earlier, but at trial, defendant testified that the pants introduced into evidence at trial were not his and the police did not recover them from his house; and (10) the defendant and Sims previously had been convicted of kidnaping a woman off the street and raping her." Henderson, 343 Ill.App.3d at 1116-17, 278 Ill.Dec. 817, 799 N.E.2d 682.
The court considered the holdings in Savory and Johnson. Henderson, 343 Ill. App.3d at 1117-18, 278 Ill.Dec. 817, 799 N.E.2d 682. It also observed that, in cases where a victim has been raped by more than one assailant, it is much more difficult to successfully analyze mixed samples but not impossible. Henderson, 343 Ill.App.3d at 1119, 278 Ill.Dec. 817, 799 N.E.2d 682, citing C. Strom, Genetic Justice: A Lawyer's Guide to the Science of DNA Testing, 87 Ill. B.J. 18, 20 (1999). The court then stated that the evidence against the defendant was "indeed overwhelming," but ruled that "our supreme court's holdings interpreting section 116-3 requests require us to hold that the trial court erred in not ordering forensic testing in this case." Henderson, 343 Ill.App.3d at 1117, 278 Ill.Dec. 817, 799 N.E.2d 682.
In the present case, the evidence against defendant was certainly compelling. The victim, Kien, testified that defendant forcibly penetrated his rectum with his penis and also forced him to perform oral sex. Lonkert's testimony regarding the sexual assault basically mirrored Kien's. Williamson testified that he witnessed defendant positioned on top of Kien while engaged in anal sex. Further, Doll testified that he saw defendant enter Kien's cell and that he overheard the attack occur. The injuries Kien sustained were consistent with his testimony of the incident. Kien also testified that defendant wore a pair of weight-lifting gloves during the attack that were later discovered in a search of defendant's cell. Finally, in light of Sternes' testimony that there was no observable bump or mark on the back of defendant's head and the fact that defendant did not tell the nurse about an attack, defendant's story that he too was the victim of a sexual assault on the night of October 31, 1994, is readily subject to a credibility attack. Moreover, the spermatozoa sample found during Kien's rectal examination was only a minor part of the *1198 State's case. It was introduced for the limited purpose of showing that Kien's anus had been penetrated.
However, we must keep in mind that this is merely a motion for forensic testing. Based on our review of the case law, particularly Hockenberry and Henderson, we believe that a favorable result on a DNA test performed on the seminal fluid or spermatozoa sample has the exculpatory potential to significantly advance defendant's claim that he did not engage in any sexual acts with Kien. Applying section 116-3, we conclude that, under the facts of this favorable result on a DNA test would be materially relevant to defendant's claim of actual innocence.
If a DNA test of the spermatozoa sample found in "Exhibit 2" demonstrates that defendant was not the source, this favorable result would significantly advance defendant's claim of actual innocence. Given that Lonkert also inserted his penis into Kien's anus, we agree with the State, as we did in Hockenberry, that it is quite possible that defendant may have committed the crime even if the DNA test reveals a nonmatch between defendant and the sample. However, we also agree with Hockenberry that such evidence would nonetheless support defendant's position that he did not engage in a sexual act with Kien. See Hockenberry, 316 Ill.App.3d at 759, 250 Ill.Dec. 111, 737 N.E.2d 1088.
Furthermore, the multiple offender problems connected to "Exhibit 2" are not present with the seminal fluid contained in "Exhibit 1." Doll maintained that defendant sexually assaulted him. There were no other offenders involved in this alleged attack. Thus, if defendant receives a favorable result on a DNA test of the seminal fluid recovered from Doll's anus, the result would significantly advance his argument that he did not sexually assault Doll, which, in turn, would significantly advance his claim that he did not sexually assault Kien. See Johnson, 205 Ill.2d at 396-97, 275 Ill.Dec. 820, 793 N.E.2d 591 (applying a similar analysis).
Now that we have decided the issue of material relevance, we further consider whether defendant presented a prima facie case that identity was at issue at his trial and that the evidence to be tested has been under a secure chain of custody. 725 ILCS 5/116-3(b) (West 2000). We believe that he has met this burden.
First, in Shum, the trial court ruled that identity was not at issue in the case because the victim who had provided a positive identification had been acquainted with the defendant prior to the crime. Shum, 207 Ill.2d at 55, 278 Ill.Dec. 14, 797 N.E.2d 609. In rejecting this position, the supreme court considered its prior holding in Johnson. Shum, 207 Ill.2d at 66, 278 Ill.Dec. 14, 797 N.E.2d 609. There, the court determined that identity was a central issue in the case because (1) the only direct evidence of the defendant's guilt was the victim's identification testimony, and (2) the defendant never admitted to being at the crime scene. Shum, 207 Ill.2d at 65-66, 278 Ill.Dec. 14, 797 N.E.2d 609, citing Johnson, 205 Ill.2d at 396, 275 Ill. Dec. 820, 793 N.E.2d 591. Deciding that the situation in Shum was nearly identical to that in Johnson in that there was a single witness and the defendant denied involvement, the supreme court found that the defendant had established that identity was a central issue notwithstanding the victim's prior familiarity with the defendant. Shum, 207 Ill.2d at 66, 278 Ill.Dec. 14, 797 N.E.2d 609; see also Anderson, 831 A.2d at 863-64, 869 (deciding that a defendant who had been convicted of sexually abusing his teenage daughter established that identity was at issue where he denied the truth of the charges and also argued that his daughter fabricated the *1199 sexual abuse allegations after having sexual intercourse with her boyfriend, which the defendant had forbidden).
Based on our supreme court's prior rulings on this issue, we find that identity was a central issue at trial in this case. While the occurrence witnesses testified that defendant sexually assaulted the victim, defendant maintained that the witnesses were lying and that he did not engage in any sexual acts with the victim.
Second, in Travis, the parties engaged in a dispute over the chain of custody of the blood and semen samples. Travis, 329 Ill.App.3d at 285, 264 Ill.Dec. 785, 771 N.E.2d 489. The court stated that "[i]t asks too much to require petitioning defendant in these cases to plead and prove proper chain of custody at the outset, for the evidence at issue will undoubtedly have been within the safekeeping of the State, not the defendant." Travis, 329 Ill.App.3d at 285, 264 Ill.Dec. 785, 771 N.E.2d 489. Then, in Johnson, the supreme court considered the State's chain-of-custody argument that the defendant presented no proof on the whereabouts of the rape kit samples he sought to have tested. Johnson, 205 Ill.2d at 394, 275 Ill.Dec. 820, 793 N.E.2d 591. The court noted that such evidence would not be available to the defendant. Johnson, 205 Ill.2d at 394, 275 Ill.Dec. 820, 793 N.E.2d 591. The court stated that "[t]he Vitullo kit, as a piece of real evidence admitted at trial, would have remained in the custody of the circuit court clerk after the defendant's conviction." Johnson, 205 Ill.2d at 394, 275 Ill. Dec. 820, 793 N.E.2d 591. Thus, the defendant satisfied the requirements of section 116-3. Johnson, 205 Ill.2d at 394, 275 Ill.Dec. 820, 793 N.E.2d 591.
Here, the samples defendant seeks to test were offered into evidence at trial as State's "Exhibit 1" and "Exhibit 2." The State and defendant stipulated that "Exhibit 1" was a rectal swab from Doll containing seminal fluid and "Exhibit 2" was a rectal swab from Kien containing one spermatozoa. After the trial, these samples were kept in the custody of the clerk of the circuit court. Thereafter, the samples were submitted as part of the record in this appeal. Applying Johnson, section 116-3's chain-of-custody requirement has been satisfied. However, on remand, the State may challenge this conclusion if it can demonstrate that the evidence has been substituted, tampered with, replaced, or altered any in material aspect. See 725 ILCS 5/116-3(b)(2) (West 2000).
Finally, under section 116-3, a defendant may request DNA testing of evidence that was secured in relation to trial but was not subject to the testing that is now requested because the DNA testing technology was not yet available. 725 ILCS 5/116-3(a) (West 2000). Thus, the DNA test defendant seeks must not have been available at trial. In his section 116-3 motion, defendant requests the following tests: (1) "DQ-ALPHA TEST"; (2) "SHORT TANDEM REPEATS (STRS) TEST"; (3) "POLYMORPHISM CHAIN REACTION (PCR) TEST"; (4) "RESTRICTION FRAGMENT LENGTH POLYMORPHISM (RFLP) TEST"; or (5) "AGCATCATCATCATTC (CAT) TEST."
In Rokita, the defendant was convicted in 1994 of sexually assaulting a woman. Rokita, 316 Ill.App.3d at 294, 249 Ill.Dec. 363, 736 N.E.2d 205. After the attack, vaginal and rectal swabs were taken during a medical examination of the victim. Rokita, 316 Ill.App.3d at 295, 249 Ill.Dec. 363, 736 N.E.2d 205. The vaginal swab tested positive for the presence of semen but contained no sperm cells. Rokita, 316 Ill.App.3d at 295, 249 Ill.Dec. 363, 736 N.E.2d 205. The rectal swab contained sperm cells. Rokita, 316 Ill.App.3d at 295, 249 Ill.Dec. 363, 736 N.E.2d 205. A State *1200 lab attempted to perform a restricted fragment length polymorphism (RFLP) test on the samples. Rokita, 316 Ill.App.3d at 295, 249 Ill.Dec. 363, 736 N.E.2d 205. The lab scientist who performed the analysis testified that the RFLP test failed to produce a DNA profile on the materials because the quality of the samples was poor. Rokita, 316 Ill.App.3d at 295, 249 Ill.Dec. 363, 736 N.E.2d 205. In 1999, the defendant filed a section 116-3 motion seeking polymerase chain reaction (PCR) based testing. Rokita, 316 Ill.App.3d at 296, 249 Ill.Dec. 363, 736 N.E.2d 205. However, the court found that the defendant actually sought a particular type of PCR testing known as short tandem repeat (STR). Rokita, 316 Ill.App.3d at 296, 249 Ill.Dec. 363, 736 N.E.2d 205. Thus, while PCR testing existed at the time of the defendant's trial in 1994 (Rokita, 316 Ill.App.3d at 299, 249 Ill.Dec. 363, 736 N.E.2d 205), STR-based PCR testing was not available (Rokita, 316 Ill.App.3d at 296, 249 Ill.Dec. 363, 736 N.E.2d 205). Moreover, the court held that STR testing had the scientific potential to create a DNA profile where the RFLP test had failed because it could obtain results from a much smaller sample. Rokita, 316 Ill.App.3d at 300, 249 Ill.Dec. 363, 736 N.E.2d 205.
From Rokita and our review of section 116-3, we extract a few important points in regard to the availability of testing. While a defendant does not have the right to receive a test that he could have received at trial, if he presents a prima facie case as to identity and chain of custody, the defendant has a statutory right to DNA testing by technology not available at the time of trial where (1) the testing result has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's claim of actual innocence and (2) the test employs a generally accepted scientific method.
In the present instance, defendant's trial took place in April 1996. We take judicial notice of the fact that at least two of defendant's requested tests were available at the time of his trial. See People v. Johnson, 262 Ill.App.3d 565, 568, 199 Ill. Dec. 931, 634 N.E.2d 1285 (1994) (observing that a court may take judicial notice of DNA identification technology as an accepted scientific procedure based on prior rulings). Both RFLP testing (see People v. Miller, 173 Ill.2d 167, 188, 219 Ill.Dec. 43, 670 N.E.2d 721 (1996)) and PCR testing (see Rokita, 316 Ill.App.3d at 299, 249 Ill.Dec. 363, 736 N.E.2d 205; People v. Pope, 284 Ill.App.3d 695, 703, 220 Ill.Dec. 309, 672 N.E.2d 1321 (1996)) were available and generally accepted in the scientific community at the time of defendant's trial. As for the other DNA tests listed by defendant, based on Rokita, it appears that STR testing became common some time between 1994 and 1999. See Rokita, 316 Ill.App.3d at 299, 249 Ill.Dec. 363, 736 N.E.2d 205. Furthermore, after conducting our research, we cannot reach any definite conclusions about the availability or existence of a "DQ-ALPHA TEST" or an "AGCATCATCATCATTC (CAT) TEST," which defendant has also requested in his section 116-3 motion. See C. Strom, Genetic Justice: A Lawyer's Guide to the Science of DNA Testing, 87 Ill. B.J. 18, 25 (1999) (listing various types of DNA technologies). Upon remand, the trial court shall determine if any of these three requested tests qualifies under section 116-3. If they qualify, the trial court shall permit testing on the seminal fluid and spermatozoa using the DNA testing method it considers most effective under the circumstances. While defendant has no statutory right to counsel under section 116-3, the trial court may appoint counsel if it deems it necessary to ensure defendant meaningful access to the courts. See *1201 People v. Love, 312 Ill.App.3d 424, 426-27, 245 Ill.Dec. 233, 727 N.E.2d 680 (2000).
For the aforementioned reasons, the judgment of the circuit court of Lee County denying defendant's section 116-3 motion is reversed and the cause is remanded with directions.
Reversed and remanded with directions.
O'MALLEY and CALLUM, JJ., concur.